Hurst Will.

Argued November 22, 1961. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

reargument refused April 16, 1962.

William J. Woolston, with him Leon H. Fox, Sr., for appellant.

Victor J. Roberts, with him Shirley S. Bitterman, William M. Barnes, and Schnader, Harrison, Segal & Lewis, and High, Swartz, Roberts & Seidel, for appellees.

Martin H. Yusem, for residuary legatees, appellees.

Ralph S. Snyder, Deputy Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, March 13, 1962:

This is an appeal from the lower court's adjudication in a will contest wherein an issue devisavit vel non was granted and the issue tried before a judge without a jury.

The testatrix, Annie E. Hurst, executed the disputed will on December 2, 1949. She was then seventy-four years of age. She died January 19, 1958.

The testatrix lived with her son, Winfred Hurst, who died unexpectedly of heart failure on November 7, 1949, while in early middle age. There were no other next of kin. In his will, Winfred Hurst gave Harry J.

Alker, Jr., then an attorney,[1] one-eighth of his residuary estate and also named Alker, Executor and Trustee. The will also specifically established a $100,000 trust fund for the support and maintenance of Winfred's mother, Annie E. Hurst. Alker was named the sole trustee of this fund with full authority to use both the income and principal for the purposes stated. The will further provided: "[M]y mother shall have the right to dispose by her will up to Twenty-five thousand dollars ($25,000) of the estate remaining in trust under this paragraph for her at the time of her death. If she should not exercise the power of appointment aforesaid, then all the principal estate remaining in trust under this paragraph at her death shall pass under, and become part of the estate disposed of by, the residuary clause of this my will."

The will in contest was executed by Annie E. Hurst less than one month following her son's sudden demise. At that time, she owned personal property valued at approximately $29,000, her residence and the testamentary power of appointment provided for in her son's will. At the time of her death, her probate estate approximated $46,000 in value and her appointive estate $25,000.

The will bequeathed the sum of $10,000 to her maid, Mary Lee Hill (Dandridge), and $5000 to her personal physician, Dr. Robert S. Crew. The entire balance of the estate, approximately $56,000 in value, was given to Harry J. Alker, Jr. absolutely. He was also named Executor.

The validity of the will was contested by some of the residuary legatees under Winfred's will, who claim they are entitled thereunder to the $25,000 remaining in the trust fund in the event that Annie E. Hurst

---

[1] See, *In re Alker, Jr.*, 16 Pa. D. & C. 2d 653, aff'd per curiam 398 Pa. 188 (1960).

failed to exercise the given power of appointment. Two issues were raised: (a) lack of testamentary capacity, and (b) undue influence. The court, after an exhaustive hearing and a searching study of the evidence, found that the decedent possessed testamentary capacity, but that Harry J. Alker, Jr. had exercised undue influence. Thus the specific legacies to Mary Lee Hill (Dandridge) and Dr. Crew were sustained but the legacy to Alker and his appointment as Executor were invalidated.

Alker prosecutes this appeal. He maintains that the court erred in finding the existence of undue influence and also questions the legal standing of the appellees in this appeal. There is no merit to either contention.

### Standing of Appellees

Alker argues that the appellees, residuary legatees under Winfred's will, have nothing to gain in this litigation and, therefore, enjoy no interest or legal standing to be party-litigants. He asserts that if the will is not sustained the entire sum in controversy will escheat to the Commonwealth of Pennsylvania. This is not correct and the record fails to justify any such conclusion.

The Commonwealth asserts no claim to the $25,000 appointive estate of the testatrix. Certainly, Alker has no standing to make any such demand for the Commonwealth. More importantly, if Alker procured the making of this will by undue influence, then any provisions thereof inuring to his benefit are completely null and void. This is singularly so in regard to the power of appointment. Alker was in fact the sole beneficiary under the testatrix's purported exercise of this power. The probative estate is more than ample to pay the only valid bequests. If Alker's unfair and illegal conduct influenced the making of this will in his favor, as the lower court found and the record abundantly sustains,

his claim to any benefits thereunder is void and completely forfeit.

Under the circumstances presented, the exercise of the power of appointment by Annie E. Hurst was void ab initio, and those named in Winfred's will as residuary legatees, because of the failure of the testatrix to exercise the power of appointment, are entitled to distribution of the sum involved: See, *Hays's Estate*, 288 Pa. 348, 135 Atl. 626 (1927); *De Charette v. De Charette*, 104 A.L.R. 1455 (Ky. 1936).

## Undue Influence

In *Quein Will*, 361 Pa. 133, 62 A. 2d 909 (1949), this Court at 145, succinctly defined what constitutes undue influence sufficient to void a will, and explained the burden and nature of proof where such is asserted. "There must be imprisonment of the body or mind, frauds or threats or misrepresentations, or circumstances of inordinate flattery, or physical or moral coercion to such a degree as to prejudice the mind of the testator, or destroy his free agency, or to operate as a present restraint upon him in the making of the will:" Generally, there is a presumption of the absence of undue influence and the burden of proof is upon those who assert it. However, "where there is evidence of *confidential* relation coupled with a *weakened mind,* the burden of proof shifts to proponents. Such evidence, however, need not be sufficient to establish testamentary incapacity. All the evidence need show is bodily infirmity and *weakened mentality.* Where the evidence shows bodily infirmity and greatly *weakened mentality,* and a stranger to the blood of the testator, standing in a confidential relation, is benefited by the will which he has been instrumental in having executed, a *presumption* of undue influence arises": pp. 145 and 146. Accord, *Kerr v. O'Donovan*, 389 Pa. 614, 134 A. 2d 213 (1957).

In the present case, it is admitted that a confidential relationship existed between Alker and the testatrix; also, that he was her advisor, the scrivener of her will; that he was the individual to whom she had to look for support and maintenance following her son's death; and, that at the time she made him the primary beneficiary under her will she knew him for a period of less than four weeks. The evidence clearly justifies the finding that during the period the will was executed she suffered from shock and grief caused by her son's recent death and was in a state of bodily infirmity and greatly weakened mentally. Hence, the burden of proving the absence of undue influence was definitely upon Alker. See, *Pusey's Estate,* 321 Pa. 248, 184 Atl. 844 (1936).

To meet this burden, he offered his own testimony as to his relationship with the testatrix; the circumstances incident to the execution of the will; the testimony of the subscribing witnesses; the testimony of the maid, Mary Lee Hill (Dandridge) and Dr. Crew. This evidence, if believed, tended to establish that at the time involved, the testatrix was comparatively healthy, mentally alert, competent to manage her business affairs and that the will was her free and voluntary act. In view of this evidence, it is strenuously argued that the burden of proving the absence of undue influence was completely fulfilled and that the burden of then going forward with proof if its existence returned to the contestants. It is submitted that this challenge went unanswered.

A detailed study of the record quickly manifests the hollowness of this position. The court below refused to believe the testimony of Alker. There was sound reason for this conclusion. The testimony of Mary Lee Hill (Dandridge), badly shaken on cross-examination, was contradicted by undeniable proof of several disinterested witnesses. These included neighbors who

testified that from the year 1946, the testatrix became increasingly confused and incoherent; that during the year 1949, she was completely incoherent and incompetent; that she would wander away and be unable to find her way home; that she absent-mindedly visited neighbors' homes and began cleaning the house thinking it was her own; that she would visit neighbors' homes and introduce herself, as if for the first time, as the lady living next door; that she frequently failed to recognize her own son, Winfred, shortly before his death; that after his demise she continued in her belief that he was still alive; that as Winfred lay in his coffin, she thought it was her husband long since deceased and frequently asked about "Win" and if he were coming to the funeral. These and other circumstances firmly established by the record lead to no other conclusion but that the testatrix and Alker did not deal on equal terms and that he took advantage for his own financial gain. Needless to say, undue influence may be established by circumstantial evidence: *Boyd v. Boyd*, 66 Pa. 283 (1871) ; *Kerr v. O'Donovan*, supra.

Finally, it is argued that the testatrix had ample opportunity to change her will and not having done so, this fact alone contraverts the existence of undue influence.[2] Again this overlooks the established facts.

The will was executed on December 2, 1949. As pointed out hereinbefore as of that time, the testatrix suffered greatly from weakened mentality. Ten days later, on December 12, 1949, she suffered an accidental fall, causing a fractured thigh, serious shock and noted increased disorientation. Until her death, her condition failed to improve and in fact grew steadily worse. She was committed as a mental patient to a sanitarium

---

[2] Undue influence must be exerted proximate to the date of the executed will and be a direct cause of the provisions or some of the provisions therein, *Williams v. McCarroll*, 374 Pa. 281, 97 A. 2d 14 (1953).

620

on June 28, 1950.  Alker signed the application.  Under such facts, the failure to change the will is readily understandable and of no significance.  Additionally, in view of all the record discloses, if the execution of the will and its import were ever fully recognized by the testatrix, it is reasonable to conclude that it was completely forgotten very shortly after its execution.

We find no error in the trial of the proceedings.

Order affirmed.  Costs to be paid by the appellant.