## Abrams Will.

Argued April 29, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

94

*Mary Alice Duffy,* for appellants.

*Walter W. Jackson,* with him *Jackson & Hinchey,* for appellee.

OPINION BY MR. JUSTICE JONES, September 29, 1965:
On April 14, 1959, David J. Abrams (decedent), then aged 61 and a resident of Bucks County, died. Surviving him were two legitimate daughters,[1] Bertha A. Moebius and Barbara A. Ballard, who are the present appellants; a woman named Minnie Bigger (Abrams) who claimed to be decedent's lawful wife at the time of his death;[2] two children, named David J. Abrams, Jr. and Eleanor Abrams Nolte, born to Minnie Bigger (Abrams) at a time when she was still married to John Bigger but living with decedent.[3]

On April 30, 1959, the Register of Wills of Bucks County admitted to probate as the last will of decedent a writing dated September 26, 1957. This writing— prepared by decedent's lawyer—provided: (a) for the

[1] Born of a marriage between Edna M. Abrams and decedent; Edna M. Abrams died in 1924.

[2] Minnie Bigger (Abrams) filed an election to take against decedent's will but her election was declared void by the court below because she was not decedent's lawful widow.

[3] These children—both adults when decedent died—apparently have made no claim in this estate.

erection of a suitable cemetery headstone for decedent and Edna M. Abrams; (b) a devise and bequest of the entire residuary estate to Girard College;[4] (c) the appointment of the lawyer-scrivener of the writing as executor.

On September 18, 1959, decedent's two legitimate daughters—unmentioned in the will—appealed from the probate of the will to the Orphans' Court of Bucks County and requested a jury trial of the issue. The grounds of the appeal were that at the time the will was executed (1) decedent was (a) intoxicated and (b) lacked testamentary capacity and (2) that decedent was subjected to undue influence.

After hearings at which voluminous testimony was taken,[5] the chancellor dismissed the appeal and sustained the probate of the will. From that decree this appeal was taken.

Two questions are presented: (1) whether the chancellor abused his discretion in refusing to grant an issue d.v.n. and award a trial by jury? (2) whether the chancellor erred in refusing to set aside the will, in rulings as to burden of proof and presumptions, in disregarding uncontradicted evidence and in his findings of fact and conclusions of law?

Appellants argue that in a will contest which (a) involves decedent's realty and (b) presents a substantial dispute of fact[6] as to the validity of the will, there

---

[4] The estate—valued at approximately $82,000—consisted of realty inherited by decedent and some cash and other personalty.

[5] In addition to testimony in the will contest, the chancellor heard testimony on Minnie Bigger's (Abrams) claim to take against the will and claims of alleged creditors. Only the will contest is involved in this appeal.

[6] Appellants admit "there is no constitutional infirmity in any legislative provision granting a jury trial *only* where a substantial issue of fact exists" (Brief p. 16) and, inferentially, admit there

is a constitutional right to a trial by jury. For the purpose of this argument we will *assume* the existence of a substantial dispute of fact and we recognize that the instant decedent's estate consists principally of realty; under such circumstances were appellants entitled to a trial by jury?

Section 1 of the Act of July 14, 1961, P. L. 610, 20 P.S. §2080.745,—the provisions of which were in effect when the hearings in the case at bar were held—provides, inter alia: "(c) Will Contest and Other Matters. When a contest shall arise concerning the validity of a writing alleged to be testamentary . . ., the court, in its discretion at any stage of the proceedings, may impanel a jury to decide any question of fact but the verdict of the jury shall be advisory only."[7]

In *Hunter Will*, 416 Pa. 127, 136-138, 205 A. 2d 97, we have recently construed this statutory provision: "Further, appellant challenges the court's conclusion that there was no necessity for a trial by jury. Appellant's argument assumes the right to a trial by jury, an assumption which is erroneous. This case came before the court subsequent to the effective date of the Act of July 14, 1961, P. L. 610, §1, 20 P.S. §2080.745, and is governed by its mandate. Prior to that Act, we held that the existence of a substantial dispute of fact in a will contest entitled the parties to a trial by jury under the then applicable statute. Murray Will, 404 Pa. 120, 128, 171 A. 2d 171, 175 (1961). But the Act of 1961 now limits the right to trial by jury to those instances where substantial disputes of fact exist as to

_____

is no right to a jury trial where only the personalty of a decedent is involved.

[7] In the court below the question was raised as to the *interpretation* of this section of the statute and the court decided that this section of the statute "no longer confers [a] mandatory right to a jury trial in will contests."

the decedent's title to property, or where proceedings to establish incompetency have been instituted.

. . .

"Under the 1961 statute we need not determine whether any substantial question of fact existed in the case at bar. The only question we need ask is: Did the trial court abuse its discretion in refusing to submit the issues to a jury for an advisory opinion? A court's unwillingness to avail itself of the assistance of an advisory jury opinion does not constitute an abuse of discretion. To hold otherwise would be an unwarranted interference with the exercise of the discretion vested solely in the trial court by the statute.

"Appellant seeks to infer a right to trial by jury from the provisions of subsection (d) of the statute which reads: '(d) Waiver of Right. A person desiring a trial by jury shall make demand therefor, in writing, at least ten days prior to the initial hearing before the court, or, if the initial hearing is dispensed with as provided in section 746 (a.1), then at least ten days prior to the trial. The right to trial by jury is waived if such demand is not so made or, after having been made, the person claiming the right fails to appear.'

"This section does not create the right to trial by jury in and of itself. The provision simply sets forth the manner in which a trial by jury, where the right to a jury trial exists under the statute, may be requested or waived. It is clear from the language of the statute that the right to a jury trial does not exist here. See Dettra Will, supra, at 204, 202 A. 2d 831."

Appellants *now* urge, however, that, if this section of the statute no longer makes mandatory a jury trial, this section of the statute violates the right to trial by jury guaranteed by Article I, §6 of the Pennsylvania Constitution and that section (a), rather than section (c), of the statute applies in the case at bar. Section

(a) provides, inter alia: "Title to Property. When a substantial dispute of fact shall arise concerning the decedent's title to property, real or personal, any party in interest shall be entitled to a trial of such issue by a jury" and then section (a) equates such jury's verdict with a jury's verdict in a common pleas case.

Neither of these questions was properly raised for determination in the court below and, therefore, we will not consider them on this appeal. "Matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions": *Montgomery County Bar Association v. Rinalducci*, 329 Pa. 296, 298, 197 A. 924. See also: *Archbishop O'Hara's Appeal*, 389 Pa. 35, 47, 131 A. 2d 587.

Appellant's second question on appeal—"catch all" in nature—basically raises the issue whether the evidence of record—viewed in the light of the applicable legal principles as to burden of proof and presumptions—was such that the chancellor should have set aside the probate of this will and that, in refusing to do so, the chancellor abused his discretion.

We initially inquire where, under our decisional law, the burden of proof as to testamentary capacity and undue influence lies and what, if any, and under what circumstances, if any, a presumption arises as to testamentary capacity and undue influence.

When evidence of the probate of the will is offered in a will contest by the will proponent, then the " 'duty to come forward with evidence' " shifts to the contestant: *Kerr v. O'Donovan*, 389 Pa. 614, 623, 134 A. 2d 213; *Paul Will*, 407 Pa. 30, 38, 180 A. 2d 254.

However, "[t]estamentary capacity is presumed. After proof of execution by two witnesses the burden of proof as to incapacity is on contestant": *Sturgeon Will*, 357 Pa. 75, 81, 82, 53 A. 2d 139. See also: *Brantlinger Will*, 418 Pa. 236, 210 A. 2d 246; *Som-*

*merville Will,* 406 Pa. 207, 216, 177 A. 2d 496; *Kerr v. O'Donovan,* 389 Pa. 614, 634, 134 A. 2d 213.[8]

As to undue influence, certain principles are established beyond question: (1) there is a *presumption* of the absence of undue influence and the *initial* burden of proof is on the contestant; (2) absent evidence of *weakened intellect,* the burden is upon those asserting it to prove undue influence even though the bulk of the estate is left to those occupying a confidential relationship; (3) when there is evidence of *confidential relation* coupled with *weakened intellect,* the burden of proof shifts to the proponent: *Quein Will,* 361 Pa. 133, 145, 62 A. 2d 909; *Gold Will,* 408 Pa. 41, 52, 182 A. 2d 707.

Moreover, "where a will is drawn by decedent's attorney and proved by subscribing witnesses, the burden of proving lack of testamentary capacity or undue influence 'can be sustained only by clear and strong or compelling evidence'; and this is especially so if proponents were corroborated by the attending physician":[9] *Williams v. McCarroll,* 374 Pa. 281, 292, 97 A. 2d 14.[10]

From our examination of the instant record we are satisfied the chancellor correctly applied the proper legal principles as to burden of proof and presumptions under the factual posture of this case.

The court below made the following findings of fact and conclusions of law:

---

[8] In the case at bar, both subscribing witnesses—as court witnesses—testified as to the execution of this will and that decedent executed it with full understanding.

[9] Dr. Gonzales—decedent's physician who had examined decedent a few months prior to and subsequent to the date the will was executed—stated decedent was not suffering from any "mental condition" and he observed nothing "mentally wrong with the man".

[10] Cf. *Masciantonio Will,* 392 Pa. 362, 379, 380, 381, 141 A. 2d 362; *Irish v. Smith,* 8 S. & R. 573, 574.

"27. Decedent was not intoxicated or under the influence of intoxicating liquor, either on the occasion of his first interview with Mr. Kilcoyne [the lawyer-scrivener of the will] on September 23rd or 24th [1957] preliminary to the preparation of the will, or on the occasion of his execution thereof on September 26, 1957.

"28. Decedent was not subject to any undue influence by any person or persons whatsoever relative to either the preparation or the content of his will on either of said occasions.

"29. There was no sufficient credible evidence that decedent, on either of said occasions, was not aware of the nature and extent of the property which he possessed.

"30. There was no sufficient credible evidence that decedent, on either of said occasions, did not know the identity of the natural objects of his bounty, to wit, the members of his family and household.

"31. Decedent, on both of said occasions, had full consciousness of the significance and effect of making a testamentary disposition of his property, and also a complete understanding of the scheme of the disposition which he had proposed and carried out by his execution of the document in question.

"32. Decedent was not, on either of said occasions, mentally incompetent.

"33. Decedent was not, on either of said occasions, suffering from any insane delusion as to any matter of fact or as to the identity of any persons."

## Conclusions of Law

"1. Decedent was not proven to have been suffering any incapacity by reason of intoxication, undue influence, lack of testamentary capacity or insane delusion at the time of making of his last will and testament on September 26, 1957.

"2. The burden of proving such incapacity was on [appellants]."

In *Dettra Will*, 415 Pa. 197, 201, 202, 202 A. 2d 827, we recently said: "In passing upon the issues of testamentary capacity and undue influence our scope of review is limited and restricted. The findings of fact of a chancellor, approved by the court en banc, are controlling provided such findings are based upon legally competent and sufficient evidence and our scope of review is to determine whether the findings of fact are supported by sufficient evidence and whether the court below committed an error of law or abused its discretion [citing authorities]. Moreover, in reviewing the proceedings in the court below, we do not pass upon or determine the credibility of the witnesses; that is a matter for the chancellor, not for this Court: [citing an authority]." See also: *Hunter Will*, 416 Pa. 127, 136, 205 A. 2d 97.

We have carefully read all the testimony presented on this voluminous record. In our view, it would serve no useful purpose either to summarize or recite the testimony of the witnesses of both the contestants and the proponent. From our study of this record we are convinced that the chancellor's findings of fact are supported by evidence both sufficient and competent and that the conclusions of law are based upon sound legal principles applied to legally sufficient evidence.

Inter alia, in its opinion, the court below stated: "Contestants have stated three grounds for their appeal from probate: their innuendo that decedent was intoxicated at the time of execution of the will, their contention that he was subject to undue influence, and their overall allegation that he lacked testamentary capacity. The first and second of these positions are totally without any semblance of evidentiary foundation. It may be conceded that contestants' testimony would indicate that decedent for a long period had been in-

temperate, and possibly even an alcoholic. Such proof, in itself, however, is insufficient in the absence of a showing of drunkenness at the time of execution of the will: [citing authorities]. In the instant case, evidence is completely absent that decedent was under the influence of alcohol on the occasion of either of his visits to his lawyer's office pertaining to the will; in fact, any intimation thereof is categorically negatived by the positive testimony of the subscribing witnesses, corroborated incidentally by contestants' own witness, Albert Losink, who apparently saw decedent both shortly before and soon after one of the visits to his lawyer's office.

"Similarly, although the burden of proof was on contestants (Paul Will, 407 Pa. 30), the record is entirely bare of the slightest indication of persuasion, coercion, or any other type of influence (whether undue or not) exercised upon or directed toward decedent by any one relative to the formulation and carrying out of his testamentary plans. No other person accompanied decedent or made the arrangements for his consultation with his attorney on the subject. No one acting for Girard College in any manner importuned him to make that charitable institution the principal beneficiary of his estate. Indeed, according to the uncontradicted testimony of [the lawyer-scrivener], decedent was quite emphatic and definite in his decision despite questioning by the attorney on the subject at the time. Significantly, when reminded that he might reconsider his dispositive scheme some months later, decedent nevertheless did not make any changes.

. . .

"The situation provides no occasion for regarding [the lawyer-scrivener] otherwise than as a substantially disinterested witness; it affords no basis for finding a confidential relationship to have existed or for imposing any burden upon [the lawyer-scrivener] to negative

undue influence: compare Wetzel v. Edwards, 340 Pa. 121, 124; Conway Will, 366 Pa. 641, 649. In any event, even were the law to the contrary, the testimony unequivocally demonstrates the complete lack of any basis for contestants' totally unfounded charge in this respect.

"The real thrust of the substantial part of contestants' rambling, indefinite, uncoordinated and inconclusive evidence was directed toward their fundamental contention that decedent lacked testamentary capacity: that he was mentally incompetent generally, and specifically was immediately laboring under an insane delusion which not only provided the occasion but also was the impelling force driving him to make the challenged testamentary disposition.

. . .

"In the court's considered opinion, contestants have failed to sustain the burden resting upon them to show that decedent did not have general testamentary capacity under the standards so defined. Evidence offered in their behalf, including that of their psychiatric expert . . ., not only was too weak and unconvincing to overcome the presumption raised by the register's record of probate, but also was completely refuted by the other evidence in the case." With these statements we fully concur.

The contestant-appellants have not only failed to produce strong or compelling evidence in support of their allegations that decedent was intoxicated or otherwise lacked testamentary capacity and/or was subject to undue influence at the time of the execution of this will but, in large measure, have relied upon conjecture, innuendo and suspicion. An objective examination of this record convinces us that the court below reached the only conclusion factually supportable and legally sound.

Decree affirmed. Costs on appellant.