359 A.2d 728

**In re ESTATE of Oscar T. ZIEL, Sr., Deceased.**
**Appeal of Harry K. ZIEL.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1975.

Decided July 6, 1976.

534

Martin W. Sheerer, Dillman, Sheerer & Schuchert, Pittsburgh, for appellant.

Joseph L. Wilson, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

This is a will contest. At issue is whether the documents, a will and two codicils thereto,[1] admitted to probate by the Register of Wills of Allegheny County, Pennsylvania, as the Last Will and Testament of Oscar T. Ziel, Sr., deceased, must be set aside because of decedent's alleged testamentary incapacity at the times when each was executed and the undue influence allegedly exerted on the decedent by Lucy W. Ziel, his sister and coexecutrix of his estate, with whom decedent had been living for nearly four years prior to his death on June 24, 1972.

The testator, a widower, was a medical doctor and at the time of his death was 73 years of age. He was survived by two sons, Oscar T. Ziel, Jr. and the contestant Harry K. Ziel, the appellant here, and the testator's sisters, Lucy Ziel and Alice A. Ziel. Oscar, Jr. is a farmer in Allegheny County. Harry, a resident of California, is also a doctor. In 1968, the testator resigned from a staff position at Ohio Valley Hospital and retired from an active private practice in the McKees Rocks area of Allegheny County. He then went to live with his sisters, Lucy and Alice, two retired school teachers, in Crafton, Pennsylvania. He remained there until his death on June 24, 1972.

In his will, executed April 17, 1971, Dr. Ziel made four pecuniary bequests to friends and relatives and left all of his tangible personal property to his two sisters, Lucy and Alice. The remainder of the estate was given to Mellon National Bank and Trust Company to be held un-

1. The will was dated April 17, 1971, and the codicils November 8, 1971, and March 18, 1972, respectively.

der an inter vivos Deed of Trust executed the same day as the will. Under the terms of that instrument, the principal was to be divided into two equal shares, one for Lucy and one for Alice; each sister was to receive income from her share for life, with the right in the trustee to invade principal if necessary to provide for the welfare or comfortable support of either. Upon the death of each sister, her share of the trust estate was to be divided and paid over as follows: forty per cent to Harry K. Ziel (or his issue if he were deceased); forty per cent to Oscar T. Ziel, Jr. (or his issue if he were deceased); and the remaining twenty per cent to the testator's grandchildren (children of Oscar T. Ziel, Jr.). The codicil of November 8, 1971, devised any real estate owned by the testator at the time of his death to Oscar T. Ziel, Jr. and his children (Oscar, Jr. to receive 50% thereof, and his children jointly the other 50%). By the codicil of March 18, 1972, Dr. Ziel added specific bequests of $25,000 to each of his two sons, Oscar, Jr. and Harry.

Harry K. Ziel appealed from the admission of these documents to probate. After a hearing, the court ruled that Dr. Ziel was possessed of the requisite testamentary capacity when he executed each of the challenged documents and was not subject to undue influence in connection with their formulation. Exceptions by the contestant were overruled by the court en banc. This direct appeal followed.[2]

 Our review in these cases is limited to determining whether the findings of fact approved by the court en banc rest on legally competent and sufficient evidence, and whether an error of law has been made or an abuse of discretion committed. *In re Estate of Fickert*, 461 Pa. 653, 337 A.2d 592 (1975); *Protyniak Will*, 427 Pa. 524, 235 A.2d 372 (1967); *Abrams Will*, 419 Pa. 92,

2. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, § 202, 17 P.S. § 211.202(3) (Supp.1975–1976).

213 A.2d 638 (1965). It is not our task to try the case anew. Credibility of the witnesses is for the hearing judge who has heard and seen them and the record will be reviewed by us in the light most favorable to the appellee. *In re Estate of Fickert, supra,* 461 Pa. at 657, 337 A.2d at 594. Our careful review of the record in the instant case reveals no such unsupported findings, errors of law or abuses of discretion and, accordingly, we affirm.

## Testamentary Capacity

The test for determining the existence of testamentary capacity, a quality every person sui juris is presumed to possess, is "whether a man [or woman] has an intelligent knowledge regarding the natural objects of his bounty, the general composition of his estate, and what he desires done with it, even though his memory may have been impaired by age or disease." *Brantlinger Will,* 418 Pa. 236, 247, 210 A.2d 246, 252 (1965). See *Hunter Will,* 416 Pa. 127, 205 A.2d 97 (1964); *Williams v. McCarroll,* 374 Pa. 281, 97 A.2d 14 (1953); *Ash Will,* 351 Pa. 317, 41 A.2d 620 (1945). A greater degree of proof of mental incapacity is required here than would be necessary to show the inability to conduct one's business affairs. See, *e. g., Brantlinger Will, supra,* 418 Pa. at 248, 210 A.2d at 253. And, of course, testamentary capacity is to be ascertained as of the date of execution of the contested document. *Masciantonio Will,* 392 Pa. 362, 384, 141 A.2d 362, 373 (1958).

In rejecting contestant's lack of testamentary capacity claim, the lower court relied primarily on the testimony of Richard Anton, Esq., a member of the bar and the scrivener of the will and the codicils. He testified unequivocally that Dr. Ziel was mentally competent at the times the documents were executed and, indeed, was active in their preparation and revision. It was Mr. Anton's testimony that his client knew exactly what he

wished to do with his property and that it was he who suggested revisions in the documents in order that his purposes might better be effectuated. Three other witnesses, Lucy Ziel, Alice Ziel and Bonnie Anton, wife of the scrivener, testified that Dr. Ziel was alert and normal on the respective date of execution of the will and the two codicils.

The contestant claims that the court failed to give adequate weight to the evidence of incapacity that he presented. A doctor, Edward A. Breathauer, Jr., who had examined Dr. Ziel during a hospital stay for a urological disorder in October, 1968, testified that Dr. Ziel was confused and disoriented, suffering from organic brain syndrome secondary to cardiovascular disease. He gave it as his opinion that Dr. Ziel was incapable of acting responsibly with respect to his property at that time, and that Dr. Ziel's condition would progressively deteriorate, with recovery unlikely. Dr. Breathauer stated that on the occasions of four post-hospitalization visits to Dr. Ziel, the last of which was in December of 1969, Dr. Ziel was still confused but not totally disoriented. We have frequently stressed the importance of determining capacity as nearly as possible to the time of execution of the contested instruments. *In re Estate of Clark*, 461 Pa. 52, 63, 334 A.2d 628, 634 (1975); *Brantlinger Will, supra*, 413 Pa. at 248, 210 A.2d at 253. Because Dr. Breathauer's opinion testimony was based on observations quite remote in time from the citical dates of execution, the lower court was correct in according it little weight.

A second medical witness Dr. William C. Marshall, called by the contestant, testified that he treated Dr. Ziel for minor ailments and saw him eight to twelve times between September of 1970 and June of 1972. He assumed that he saw Doctor Ziel in May of 1971 but was unable to pinpoint that time or any other precise dates of their meetings. Asserting that one could tell on these occasions that Dr. Ziel was "not himself", Dr. Marshall ac-

knowledged a fluctuation in the testator's condition, saying there were times "when he was not so much [confused] and time when he was quite cooperative." Despite occasions where Dr. Ziel was uncooperative and disoriented, the witness said "sometimes he would be a little more responsive and asked me how things were going, and how he was doing."

Contestant's wife, who with her husband lived in California, testified she had seen Dr. Ziel on three separate occasions—in April of 1969, April of 1970 and April or May of 1972—and that the doctor had not recognized her. The contestant, Harry K. Ziel, saw his father only infrequently in the relevant time period. He claimed that his father's mental condition began its downswing in 1965 and that by April of 1969 he was completely incapable of handling his own affairs. He said that his father failed to recognize him also on a number of occasions.[3] Despite these misgivings about his father's mental condition, Harry accepted from his father[4] a gift of $5,000 in March 1971 and a transfer of a joint savings account having a balance of $11,700 in April, 1972.[5]

---

**3.** Lucy and Alice Ziel testified that Dr. Ziel had recognized both Harry Ziel and his wife on those occasions.

**4.** These gifts were handled through Lucy Ziel, who at the time was acting as Dr. Ziel's attorney-in-fact.

**5.** Other witnesses who testified for contestant were, if anything, favorable to the proponent. Catherine Bladel, a neighbor, testified that she occasionally exchanged greetings with Dr. Ziel and although he appeared a little confused at times, he was generally mentally alert. Mary Vito, who operated a neighborhood pharmacy, stated that the doctor often came into her store and she had noticed no change in his mental condition through 1971. John Daniels, Chief of the Crafton Police force, said that Lucy Ziel had requested that the police escort him back home whenever he wandered off on a walk, and that this had occurred five or six times over the years Dr. Ziel had lived in Crafton. Daniels' only comment was, "It seems the man was a little confused. But he was always dressed neat and sharp." Finally there was the testimony of Dr. Zeiler of the staff at Ohio Valley Hospital, where Dr. Ziel also had been a staff member. He explained that Dr. Ziel had been asked to move to honorary status because he was no longer able to handle his caseload. He did not, however, attribute the move to a decline in the doctor's mental faculties.

■ The scheme of disposition of testator's estate, as related heretofore, is, in our view, natural and reasonable. Harry K. Ziel receives a direct cash bequest of $25,000 and a remainder interest in the trust assets. Oscar, Jr. is similarly provided for but in addition is to receive one-half of the testator's real estate holdings. Lucy Ziel, with whom testator lived in his last years and who aided him in conducting his affairs during those years, is to receive a portion of his personal property and income from the trust while she lives. The other sister, Alice is treated exactly the same as Lucy. See *Williams v. McCarroll, supra,* 374 Pa. at 285, 97 A.2d at 16. No purpose would be served by delving further into the evidence. Suffice it to say that the contradicted testimony of occasional confusion or lapses of memory here is insufficient to demonstrate clearly and convincingly a lack of testamentary capacity. See *Heiney Will,* 455 Pa. 574, 577, 318 A.2d 700, 702 (1974); *Protyniak Will, supra; Ash Will, supra; Phillips Estate,* 299 Pa. 415, 149 A. 719 (1930).

## *Undue Influence*

■ Of course, even if it is shown that the testator possessed the requisite testamentary capacity, he still may have been subjected to such undue influence as would invalidate all or part of the probated testamentary disposition.

> "The word 'influence' does not refer to any and every line of conduct capable of disposing in one's favor a fully and self-directing mind, but to control acquired over another that virtually destroys his free agency.

The contestant also offered into evidence several letters that he had received from Lucy Ziel, which he claims demonstrate the severely deteriorated mental condition of his father. Having examined the letters, of which the lower court made no mention, we find no such indication therein. To the contrary, they simply evidence the concern of a sister for her brother once active but now retired and inactive and showing definite signs of the aging process.

*. . . In order to constitute undue influence suffi-
cient to void a will, there must be imprisonment of the
body or mind . . .* fraud, or threats, or misrep-
resentations, or circumvention, or inordinate flattery
or physical or moral coercion, *to such a degree as to*
prejudice the mind of the testator, to *destroy his free
agency and to operate as a present restraint upon him
in the making of a will." Williams v. McCarroll, su-
pra,* 374 Pa. at 295–296, 97 A.2d at 20 *quoting from
Phillips Estate,* 244 Pa. 35, 43, 90 A. 457, 460 (1914).

Although there is no direct evidence of undue influence
exerted on the decedent by Lucy Ziel, contestant claims
that Dr. Ziel was in such a weakened and vulnerable
mental state that his will was likely overborne by Lucy
Ziel during his final years with her. Undue influence
may be, and often can only be, proved by circumstantial
evidence. *Hurst Will,* 406 Pa. 612, 179 A.2d 436 (1962).
We have recently had occasion to delineate the proof bur-
den to be shouldered by the party claiming undue influ-
ence. The contestant must establish "that 1) when the
will was executed the testator was of weakened intellect,
and 2) that a person in a confidential relationship with
the testator 3) receives a substantial benefit under the
will." *In re Estate of Fickert, supra,* 461 Pa. at 657, 337
A.2d at 594. See *In re Estate of Clark, supra,* 461 Pa. at
60, 334 A.2d at 632. Once each of these elements is
shown by clear and convincing evidence, the burden shifts
to the proponents of the will to refute the charge of undue
influence. See *In re Estate of Fickert, supra; In re Es-
tate of Clark, supra; In re Estate of Button,* 459 Pa. 234,
328 A.2d 480 (1974). In the case at bar the contestant
has not successfully met his burden on any of the three
necessary elements.[6]

**6.** As we noted *In re Estate of Button, supra,* 459 Pa. at 241, 328
A.2d at 484, n. 7: "This burden requires proof greater than a
mere preponderance, *Girsh Trust,* 410 Pa. at 471, 189 A.2d at 859,
but less than beyond a reasonable doubt. *Petro v. Secary Estate,*
403 Pa. at 543, 170 A.2d at 327."

542

The weakened mental condition which must be shown does not rise to the level of testamentary incapacity. *In re Estate of Clark, supra,* 461 Pa. at 61, 334 A.2d at 633. Stressing this, contestant claims that his proof of testamentary incapacity amounts *a fortiori* to clear and convincing evidence of the weakened mental condition of Dr. Ziel. The lower court disagreed. As indicated in our earlier review of the evidence, the record in this case provides no basis for upsetting the lower court's judgment on this point.

Lucy Ziel's status as attorney-in-fact, contestant next argues, makes out a prima facie case of the requisite confidential relationship. Again, we cannot agree. Mr. Anton and Lucy Ziel testified that Dr. Ziel appointed Lucy as his attorney-in-fact because he knew other people his age who had made such arrangements and because the bank had complained that the signatures on his checks were increasingly less uniform. A confidential relationship in this sense exists whenever "the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed [for] in both [situations] an unfair advantage is possible." *In re Estate of Button, supra,* 459 Pa. at 239, 328 A.2d at 483, n. 4. It is true that we have said, as contestant notes, *Foster v. Schmitt,* 429 Pa. 102, 108, 239 A.2d 471, 474 (1968), that no clearer indication of a confidential relationship could exist than giving another person the power of attorney over one's entire life savings. Here, however, Lucy bcame his attorney-in-fact at Dr. Ziel's instance and merely for his convenience. Moreover, Mr. Anton and others testified that Dr. Ziel was well aware of the extent of his property and was active in handling his business affairs. The hearing judge was entirely justified in concluding that contestant's evidence does not demonstrate convincingly

that Dr. Ziel was subject to any overmastering influence by Lucy Ziel.

 Finally, the facts here fail to disclose that the requisite "substantial benefit" came to Lucy Ziel through the exercise of undue influence. The concept of undue influence is predicated on the assumption that the influence of a strong and predatory character close to a testator who is possessed of a weakened mental state will prey insiduously on the weakened intellect in order to extract testamentary benefactions that would not otherwise be forthcoming.[7] Here, although benefit under the will is received by Lucy Ziel, and although that benefit is substantial in an absolute sense, there has been a steady decline in its value relative to the entire estate during the very period when the alleged undue influence was exerted.

 During that time period, Lucy's share of her brother's estate declined rather significantly. With the first codicil, the testator's real estate holdings, valued at $74,500, were withdrawn from the corpus of the trust from which Lucy and her sister were to derive income and were devised to Oscar Ziel, Jr. and his children. By the second codicil, the testator further removed $50,000 from the residuary estate which would comprise the corpus of the trust estate and specifically bequeathed it in equal shares to his sons, including the contestant. Thus, Harry's share of his father's estate was increased during this time by the $25,000 bequest.[8] None of this sequence

7. "Undue influence is generally accomplished by a gradual progressive inculcation of a receptive mind. The 'fruits' of the undue influence may not appear until long after the weakened intellect has been played upon." *In re Estate of Ciark, supra,* 461 Pa. at 65, 334 A.2d at 634.

8. As mentioned, Harry Ziel has a forty per cent remainder interest in the *inter vivos* trust into which pours the residuary estate. There is not a scintilla of evidence, however, that the influence of Lucy Ziel motivated the removal of real estate from the trust by the first codicil.

544

of events demonstrates any influence by Lucy, let alone a nefarious influence. The court below was entirely correct in dismissing this challenge to the will and codicils.

Decree affirmed. Costs on appellant.

EAGEN and MANDERINO, JJ., concur in the result.

JONES, C. J., did not participate in the consideration or decision of this case.