454 A.2d 31

**ESTATE OF Franz A. KEIPER, Deceased.**

**Appeal of: Lloyd H. MOLL, Executor of the Estate of Franz A. Keiper, Deceased, and Luise G. Moll.**

Superior Court of Pennsylvania.

Argued May 12, 1982.

Filed Oct. 29, 1982.

Reargument Denied Jan. 6, 1983.

Petition for Allowance of Appeal Denied March 3, 1983.

84

J. Brooke Aker, Norristown, for appellant.

Peter W. Schmehl, Reading, for appellee.

Before CIRILLO, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in returning the assets of appellant Luise Moll's bank accounts to decedent's estate. Because the record supports the lower court's decree, we affirm.

Following his wife's illness and his own hospital stay for inoperable cancer, decedent opened a bank account giving power of attorney to his son-in-law, appellant Lloyd Moll. After his wife's death and his own rehospitalization, decedent signed a document prepared by Lloyd Moll authorizing that assets in decedent's accounts be put in the joint names of him and his daughter, appellant Luise Moll, "as he [Lloyd Moll] shall deem appropriate." Lloyd Moll then put decedent's accounts in the names of decedent and Luise Moll. Decedent subsequently executed a will leaving certain amounts to his three children. Finally, decedent took a down payment from the sale of his residence and placed it in a new account, without any power of attorney in Lloyd Moll. When the balance was paid, however, the down payment and the balance were deposited in one of the joint accounts, not in decedent's own account.[1] Following decedent's death, Lloyd Moll, as executor, filed an inventory of the estate's assets excluding certain items of personal property and the contents of the joint accounts. Appellees, decedent's other two children, objected to the account. After a hearing, the lower court found the personal property properly excludable inter vivos gifts [2] but determined that the joint accounts had been established as a result of a confidential relationship and thus must be returned to the estate. This appeal followed.

1. Lloyd Moll had power of attorney over all accounts except that opened by decedent with the initial deposit from the sale of the residence.

2. Appellees have not appealed that decision.

■ Appellants contend first that no confidential relationship existed between decedent and appellant Lloyd Moll Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship is not confined to a particular association of parties, but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest.

*Silver v. Silver*, 421 Pa. 533, 537, 219 A.2d 659, 662 (1966). The relationship between decedent and Lloyd Moll, together with the circumstances surrounding the transactions, supports the lower court's finding of a confidential relationship. "No clearer indication of a confidential relationship could exist than giving another person the power of attorney over one's entire life savings." *In re Estate of Ziel*, 467 Pa. 531, 542, 359 A.2d 728, 734 (1976); *see Foster v. Schmitt*, 429 Pa. 102, 239 A.2d 471 (1968). Although the mere power of attorney may be insufficient to establish a confidential relationship when it is clear that the attorney served only at the instance and for the convenience of the decedent, *In re Estate of Ziel, supra*, we are satisfied that the surrounding circumstances clearly established Lloyd Moll's confidential relationship with decedent. *See Foster v. Schmitt, supra.* The lower court rejected appellants' uncorroborated and self-serving testimony that the transfers were made at the request of decedent and, in fact, found that Lloyd Moll was the motivating force behind the document authorizing him to add Luise Moll's name to the accounts. A "natural confidence," *Silver v. Silver, supra*, existed between decedent and Lloyd Moll, a trust officer at a local bank, and decedent could easily have assumed his affairs would be administered with his best interest in mind. In fact, decedent automatically turned to Lloyd Moll when arranging for the sale of his residence. Moreover, in the course of ten months, decedent lost his wife, was terminally ill, and was unable to care for himself. One of his physicians testified that he was getting mentally weaker and required care

from others. N.T. May 27, 1981 at 175. Lloyd Moll occupied a position relative to decedent that inspired confidence in administering his business affairs. The evidence clearly supports the lower court's finding of a confidential relationship.

Appellants argue, however, that even if a confidential relationship existed between decedent and Lloyd Moll, the transfers were not invalid as to Luise Moll because she, the donee of the alleged inter vivos gift, did not have a confidential relationship with her father, the donor.

Appellants correctly maintain that a parent-child relationship does not necessarily indicate a confidential relationship. It is, however, a fact to be considered. *In re Null's Estate*, 302 Pa. 64, 153 A. 137 (1930). Although the "creation of a joint account with rights of survivorship, evidenced by a signature card signed by both parties, is prima facie evidence of an inter vivos gift from the party funding the account to the other joint tenant," *Scott Estate*, 455 Pa. 429, 431, 316 A.2d 883, 885 (1974), this general principle does not apply, and the burden of proof shifts to the recipient, "where the relation of the parties to each other or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it." *Weber v. Kline*, 293 Pa. 85, 87, 141 A. 721, 722 (1928). The burden will shift if, "circumstances make it certain the parties do not deal on equal terms but, on the one side there is an overmastering influence or, on the other, weakness, dependence or trust, justifiably reposed..." *Kees v. Green*, 365 Pa. 368, 374–5, 75 A.2d 602, 605 (1950). Moreover, "the normal rules respecting the burden of proof will not obtain where there is something in the relationship or circumstances of the donor or the donee that makes it doubtful that the normal presumption of a gift has any basis in reality." *Dzierski Estate*, 449 Pa. 285, 289, 296 A.2d 716, 718 (1972). "Transactions by which a decedent shortly before his death practically strips himself of all his available property are natural-

ly regarded with suspicion, and are to be scrutinized with a keen and somewhat incredulous eye." *Wise's Estate*, 182 Pa. 168, 171, 37 A. 936 (1897).

We find the relationships of the parties, coupled with the surrounding circumstances sufficient to shift the burden of proof to appellants. In June, 1976, decedent executed a will leaving certain monetary bequests to each of his three children, and the following month, opened the one account solely in his name and deposited in it the down payment from the sale of his house. In September, 1976, Lloyd Moll exercised his power of attorney, closed the account in decedent's own name, and then transferred the initial deposit and the balance from the sale. Through Lloyd Moll's actions, Luise Moll acquired a right of survivorship in accounts totalling almost $40,000, all of the liquid assets belonging to decedent, wholly negating decedent's bequests to his remaining children and any intent decedent had to effectuate his will with money from the sale of the house. Moreover, in the ten month period during which the transfers occurred, decedent's health was failing, he lost his wife, was diagnosed as having inoperable cancer and leaned increasingly on appellants when making decisions and administering his business affairs. Thus, this situation, in which a donor suffering terminal illness and recent bereavement, had his assets effectively disposed of by a trusted adviser, contrary to the intent expressed in the donor's will and suggested by his independent actions, must be regarded with such suspicion as to shift the burden of proof to the recipient of the purported gift. Although Luise Moll, the recipient, disclaims any knowledge of the transfers prior to decedent's telling her of the gift, we cannot find imposing the burden of proof on her to be unfair, especially because her own husband's actions and power of attorney were so intrinsically involved in the questioned transfers. Furthermore, appellants offered no evidence why decedent would have given Luise Moll the majority of his assets, and why he would have voluntarily precluded his own will from being effectuated.

We see no reason to disturb the lower court's finding that appellants had not met their burden and, accordingly, affirm its order that the asserts be included in decedent's estate.[3]

Affirmed.

**3.** Appellants contend also that appellees were bound by appellants' testimony because of counsel's failure to call appellants as on cross-examination. Appellees called appellants on at least two occasions each but only specifically stated the witness was called as on cross-examination on the last occasion. Generally, if a party calls an adverse witness the testimony is conclusive unless rebutted. 42 Pa.C.S.A. § 5935. This is not true, however, "if the testimony of the adverse party is contradicted by the direct testimony of other witnesses, or is impeached by its own inconsistencies or by such intrinsic improbability or obvious falsity as to stamp it unworthy of belief." *Kelly v. Oxgrove Development Corp.,* 456 Pa. 306, 308, 319 A.2d 424, 425 (1974); *see Piwoz v. Iannocone,* 406 Pa. 588, 178 A.2d 707 (1962). The record is replete with contradictory evidence about the transactions. In addition, the testimony as to decedent's instructions which, in effect, negated the intent of his will, is intrinsically improbable. We therefore find this contention without merit.

Appellants contend also that the lower court incorrectly held them to the professional standard of an attorney because of Lloyd Moll's position as a trust officer. Because we find that there was indeed a confidential relationship, we need not address appellants' contention.