452 A.2d 532

**In re ESTATE OF Pierino DiPIETRO.**

**Appeal of Anthony DiPIETRO, Proponent of the Will of Pierino DiPietro.**

Superior Court of Pennsylvania.

Argued June 7, 1982.

Filed Nov. 5, 1982.

Petition for Allowance of Appeal Denied Jan. 20, 1983.

John T. Salvucci, Media, for appellant.

Donald W. Lehrkinder, Media, for participating party.

Before CAVANAUGH, ROWLEY and WATKINS, JJ.

CAVANAUGH, Judge:

In this will contest, an extensive hearing was held before the Register of Wills, Anthony J. Semeraro, now a Judge of the Court of Common Pleas of Delaware County. The register found in favor of the proponent of the will, the appellant herein, and directed that the will be admitted to probate. The contestants appealed to the Orphans' Court Division of the Court of Common Pleas and agreed that the case would be decided on the basis of the testimony before the register and the testimony of one witness before President Judge Catania, Pauline Capriotti, a daughter of the decedent, and one of the contestants. Judge Catania sustained the appeal on the basis that the contestants had established undue influence.[1]

■ Our review in a will contest is limited to determining whether the findings of fact approved by the court *en banc* are based on legally competent and sufficient evidence and whether an error of law has been made or an abuse of discretion committed. *Ziel Estate,* 467 Pa. 531, 359 A.2d 728 (1976), *Katkowski Estate,* 485 Pa. 378 (1979). In this case the court below made no findings of fact. Judge Catania himself dismissed the exceptions to his order sustaining the appeal.[2] Further, our case is complicated by the rule that "credibility of the witnesses is for the hearing judge *who has heard and seen them* and the record will be reviewed in the light most favorable to the appellee". (Emphasis added). *Ziel Estate, supra,* 467 Pa. 537, 359 A.2d at 731. In our case

---

1. The court below stated at page 7 of its opinion: "Even without the opportunity to observe the demeanor of most of the witnesses in order to assess their credibility, the court believes that a case of 'undue influence' has been made out, and has not adequately been refuted."

2. After sustaining the appeal from the register, Judge Catania issued Letters of Administration D.B.N.C.T.A. to Julia D'Agostino.

the register of wills heard most of the testimony and he found in favor of the appellant.

The testator, Pierino DiPietro, who died on February 23, 1979, at the age of 83, executed the will in question in March, 1974. He was survived by five children. Under his will he bequeathed one thousand dollars to his daughter, Pauline Capriotti, and left his entire residuary estate to his son, Anthony DiPietro, who was named executor of his will. Testator's will was prepared by Richard Prevail, Esquire, who died prior to the proceedings before the register of wills.

The sole question before this court is whether there was sufficient evidence to establish undue influence by the appellant that resulted in the testator leaving the bulk of his estate to the appellant. Our Supreme Court recently considered the meaning of undue influence in *Ziel Estate, supra,* and stated at 467 Pa. 540, 541, 359 A.2d 728 (1978):

> "The word 'influence' does not refer to any and every line of conduct capable of disposing in one's favor a fully and self-directing mind, but to control acquired over another that virtually destroys his free agency.... *In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind ...* fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery or physical or moral coercion, *to such a degree as to* prejudice the mind of the testator, to *destroy his free agency and to operate as a present restraint upon him in the making of a will." Williams v. McCarroll, supra,* 374 Pa. [281] at 295–296, 97 A.2d [14] at 20 *quoting from Phillips Estate,* 244 Pa. 35, 43, 90 A. 457, 460 (1914).

To show undue influence: "[T]he contestant must establish by *clear and convincing evidence* that 1) when the will was executed the testator was of weakened intellect, and 2) that a person in a confidential relationship with the testator 3) receives a substantial benefit under the will." *Fickert Estate,* 461 Pa. 653, 657, 337 A.2d 592, 594 (1975). (Emphasis added). There is no question that the third requirement was met as appellant was the sole beneficiary

of the testator's residuary estate. We are also satisfied that there was sufficient evidence to carry the burden of demonstrating that testator was of weakened intellect when he made his will. He was of advanced years and medical testimony established that he had been diagnosed as suffering from organic brain syndrome in February 1973, when he had been confined to the hospital. Testator's own physician, Dr. Patterson, a family practitioner, who first saw the testator in May, 1976, was of the opinion that he had average intelligence for a man of his age. Nevertheless, there was sufficient evidence to sustain the determination that the testator had impaired intelligence when he made his will.

The keystone that is missing is sufficient evidence to establish a confidential relationship between the testator and his son, the appellant. Judge Catania in his opinion bases the existence of the confidential relationship on the fact that the appellant had been in business with his father at one time and had countersigned checks for him. It appears that testator's other children had also at one time or another assisted their father in his business. With respect to countersigning checks, the appellant testified as on cross-examination as follows:

Q. You said that you have endorsed your father's name to checks for him and that you filled out deposit slips and withdrawal slips.

A. Well, let me undestand. When you say endorsed, now, exactly what do you mean by endorsed?

Q. Well, sign his name and place the money in his account?

A. I didn't sign his name. He signed his own name every time and then I just countersigned in order to be able to cash the check.

Q. What you are saying is, when he would endorse the check then, you would subsequently endorse the check?

A. Right.

Q. And you would subsequently endorse it with your name?

A. Yes.

Q. Were there any times that you ever signed your father's name?

A. No.

Q. You never signed your father's name to anything?

A. No.

There is no indication whatsoever that the appellant took any advantage of his father by countersigning his father's checks. The court below pointed out at page 7 of its opinion: "The court does not question the good intention of the proponent [appellant herein] on his father's behalf."

With respect to the testator's making his will in 1974, the evidence established that the appellant took his father to the office of Richard Prevail, Esquire, because his father wanted to make a will. Appellant made no suggestions to his father concerning the will because: "he had his mind made up and he was going to do what he wanted to do." During the first meeting between Mr. Prevail at his office and the testator, the appellant testified that he was present in case "Mr. Prevail ran into any difficulty understanding my father that I would help him clarify what my father said." The testator was born in Italy and apparently spoke with an accent. However, the appellant did not participate in the discussion which the testator had with Mr. Prevail concerning the will. When testator returned to Mr. Prevail's office to sign his will on a date subsequent to the original meeting, the appellant brought his father to the office but did not recall whether he was present at the actual signing of the will. Appellant did not witness his father's will.

■ A confidential relationship for the purpose of establishing undue influence exists: *"when the circumstances make it certain* that the parties did not deal on equal terms, but on one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." (Emphasis added). *Leedom v. Palmer,* 274 Pa. 22, 25, 117 A. 410, 411, (1922). *See also Clark Estate,* 461 Pa. 52,

334 A.2d 628 (1975).[3] In this case, the record does not establish a confidential relationship by clear and convincing evidence. All it does is establish that the testator wanted to make a will and was assisted in doing so by reputable counsel. The evidence introduced in the court below to establish undue influence is based primarily on the appellant's testimony and falls far short of clear and convincing evidence and in fact does little to even suggest undue influence.

Order reversed and case remanded for further proceedings consistent with this opinion.

ROWLEY, J., files dissenting statement.

ROWLEY, Judge, dissenting:

I respectfully dissent. In my judgment the record does not reveal that the trial court abused its discretion nor that it erred in applying the correct legal principles in this case. President Judge Catania discussed the evidence presented, clearly set forth the facts as he found them, and applied the applicable principles of law to those facts. It was his conclusion that clear and convincing evidence of a confidential relationship between decedent and the appellant had been presented, and that a prima facie case of undue influence had been established which was not adequately refuted by the appellant.

My review of the record persuades me that the evidence relied on by President Judge Catania in arriving at his conclusion was legally competent and sufficient. Consequently, under the limited scope of review granted this Court in *In re Estate of Ziel*, 467 Pa. 531, 359 A.2d 728 (1976), I would affirm the order of the trial court.

3. While generally there might always appear to be a confidential relationship between a son and his father, as far as the concept of undue influence is concerned the term "confidential relationship" has a limited meaning. As noted in *Leedom v. Palmer, supra*, 274 Pa. 26, 117 A. 412: "... care must be used not to confound acts springing from natural love and affection with confidential relations..."