496 A.2d 1227

**In re ESTATE OF Kata BANKOVICH.**

**Appeal of Joseph YURFICK.**

Superior Court of Pennsylvania.

Argued April 10, 1985.

Filed Aug. 9, 1985.

Peter M. Suwak, Washington, for appellant.

Charles S. Morrow, Pittsburgh, for appellees.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

Joseph Yurfick, the sole beneficiary under the terms of the last will and testament of his deceased mother, has appealed from an order of the Orphans' Court of Beaver County which refused to allow the will to be probated because it was found to be a product of undue influence.

Kata Bankovich died on April 22, 1983 at the age of 87. She was survived by seven children,[1] including the appellant. She had lived on a farm in Beaver County until her husband died in 1973. Thereafter, the oldest son, Stephen Yurcic,[2] joined her at the farm and lived with her until his death in August, 1979. Stephen discovered in late 1978 or early 1979 that he was terminally ill. On May 4, 1979,

---

1. Anne Megart and Joseph Yurfick were children born during Kata Bankovich's marriage to J.J. Yurfick. Ignatz William Bankovich, Jr., Catherine Tannehill, Mary Noonan, Dorothy Weaver and Rose Marie Skalka were children of a later marriage to Ignatz William Bankovich.

2. Stephen Yurcic spelled his name differently than his father and brother.

appellant, who lived only a few miles from his mother's farm and who assisted Stephen in taking care of her, took his mother to the offices of her attorney where a will was prepared and executed. The will provided in pertinent part as follows:

> All of my estate, real, personal or mixed, of whatsoever nature and wheresoever situate, which I may own or have the right to dispose of at the time of my decease, I give, devise and bequeath to my son Stephen Yurcic, and in the event that he predecease me, then to my son Joseph Yurfick, to be his absolutely.

While at the lawyer's office, Kata Bankovich also executed a power of attorney in favor of appellant. In 1980, after Stephen had died, she also conveyed her farm to Joseph Yurfick, the appellant. On December 23, 1980, however, Kata Bankovich was declared incompetent; and on January 4, 1983, the deed was set aside.

Within three days after the death of the testatrix, Anne Megart, a daughter, filed a caveat in the office of the Register of Wills of Beaver County. When appellant offered the will for probate, the Register of Wills certified the record to the Orphans' Court to determine whether the will should be admitted to probate. After two days of hearings, the Orphans' Court found that the testatrix had been subjected to undue influence by her son, Joseph. In reaching this determination, the court found that Joseph had occupied a confidential relationship with the testatrix who, at the time of executing the will, had been of a weakened intellect. The court, therefore, placed the burden on appellant, the proponent of the will, to show that the will had been the product of the testatrix's free will and not the result of undue influence. The court found that appellant had failed to meet this burden and, therefore, refused to allow the will to be admitted to probate. Exceptions were denied, and this appeal followed.

"Our review in [a will contest] is limited to determining whether the findings of fact approved by the court en banc rest on legally competent and sufficient evidence, and

whether an error of law has been made or an abuse of discretion committed." *In re Estate of Ziel*, 467 Pa. 531, 536, 359 A.2d 728, 731 (1976); *In re Estate of DiPietro*, 306 Pa.Super. 238, 240, 452 A.2d 532, 533 (1982). "It is not our task to try the case anew." *In re Estate of Ross*, 316 Pa.Super. 36, 40, 462 A.2d 780, 782 (1983). "This rule is particularly applicable 'to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony.'" *Estate of Gilbert*, 342 Pa.Super. 82, 87, 492 A.2d 401, 404 (1985), quoting *In re Estate of Dembiec*, 321 Pa.Super. 515, 519–520, 468 A.2d 1107, 1110 (1983).

The burden of proof in cases of this type is as defined by the Supreme Court in *Estate of Reichel*, 484 Pa. 610, 400 A.2d 1268 (1979). The Court said:

> When the proponent of a will proves that the formalities of execution have been followed, a contestant who claims that there has been undue influence has the burden of proof. The burden may be shifted so as to require the proponent to disprove undue influence. To do so, the contestant must prove by clear and convincing evidence that there was a confidential relationship, that the person enjoying such relationship received the bulk of the estate, and that the decedent's intellect was weakened.

*Id.*, 484 Pa. at 614, 400 A.2d at 1270. See also: *In re Estate of Pedrick*, 505 Pa. 530, 538–39, 482 A.2d 215, 219 (1984); *Estate of Shelly*, 484 Pa. 322, 332, 399 A.2d 98, 103 (1979).

"For purposes of voiding a will on the ground of undue influence, a confidential relationship exists whenever circumstances make it certain that the parties did not deal on equal terms but that on the one side there was an overmastering influence, and on the other, dependence or trust, justifiably reposed." *In re Estate of Ross, supra* 316 Pa.Super. at 42, 462 A.2d at 783.

> Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship is not confined to a

particular association of parties, but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest.

*Estate of Buriak*, 342 Pa.Super. 371, 374, 492 A.2d 1166, 1167 (1985), quoting *Estate of Keiper*, 308 Pa.Super. 82, 86, 454 A.2d 31, 33 (1982). "Although a parent-child relationship does not conclusively suggest a confidential relationship, it is a fact to be considered." *Estate of Gilbert, supra* 342 Pa.Super. at 88, 492 A.2d at 404. "No clearer indication of a confidential relationship [can] exist than giving another person the power of attorney over one's entire life savings." *Estate of Keiper, supra* 308 Pa.Super. at 86, 454 A.2d at 33, quoting *In re Estate of Ziel, supra* 467 Pa. at 542, 359 A.2d at 734.

The trial court found that a confidential relationship had existed between the testatrix and the appellant, her son. The evidence supports this finding. In 1973, after Kata Bankovich had become a widow, appellant joined with his brother, Stephen, in assuming responsibility for her care. The other children were informed that their assistance was not required. By 1978, perhaps earlier, Kata had become wholly dependent upon Stephen and Joseph for her maintenance and care. They assumed total control over her every day affairs, acted as her spokesmen, made decisions for her, and discouraged social intercourse with her daughters. Ignatz William Bankovich, Jr., who had lived on the farm during the last seven years of Kata's life, testified that in the latter part of 1978, Stephen became ill, and his illness was diagnosed as terminal cancer. Thereafter, the appellant assumed exclusive responsibility for managing his mother's affairs. Joseph testified of the relationship existing after his mother became a widow, "[w]e [Stephen and Joseph] were there all the time. We planned her life between the two of us. We knew what my mother's desires were in her lifetime and what she wanted." (N.T. at 182). When the testatrix went to the lawyer's office to prepare a will, appellant went with her, participated in the conference,

and stood by as the will was explained to her. She made no response to the attorney's explanation but merely signed the will. On the same day, she executed a general power of attorney by the terms of which appellant was authorized to manage and control all of her property.

After 1975, Kata Bankovich suffered a progressive loss of intellect and awareness. Her children testified that she had almost completely lost touch with reality by the time of her death. Frequently she failed to recognize her children and on occasion imagined that she was back in her native Yugoslavia. Long before executing her will, the testatrix had sustained an impairment of memory, and by May, 1979, her senility had become manifest. Although her weakened intellect did not necessarily result in a loss of testamentary capacity, it was such that she was susceptible to influence by the son upon whom she relied for her care. See: *In re Estate of Ziel, supra,* 467 Pa. at 542, 359 A.2d at 734. "Undue influence," it has been said, "is generally accomplished by a gradual, progressive inculcation of a receptive mind. The 'fruits' of the undue influence may not appear until long after the weakened intellect has been played upon." *In re Estate of Clark,* 461 Pa. 52, 65, 334 A.2d 628, 634 (1975).

 Because appellant was also the principal beneficiary under his mother's will, it was necessary that he assume the burden of proving by clear and convincing evidence that his mother's will was not the product of undue influence. See: *In re Estate of Button,* 459 Pa. 234, 328 A.2d 480 (1974). This was not altered merely because at the time of executing the will the principal beneficiary appeared to be Stephen. Not only had Stephen, a bachelor, been pronounced terminally ill prior to the execution of the Kata Bankovich will, but appellant had employed Stephen, had enjoyed a close relationship with his brother, and had been named sole beneficiary in Stephen's will.

 The trial court found that appellant failed to prove that the will had been the product of the testatrix's free

will. Rather, the court found, it had been the result of an overmastering influence which appellant exerted upon his mother. Our review of the record discloses a proper application of legal principles and evidentiary support for the findings of the trial court. The decree, therefore, will be affirmed.

Affirmed.