550 A.2d 1015

In re ESTATE OF Lonny L. McDAVITT, Deceased.

Appeal of Lavern McDAVITT, Executrix of the Estate of Lonny L. McDavitt, Deceased.

Superior Court of Pennsylvania.

Submitted Aug. 1, 1988.

Filed Nov. 30, 1988.

Alfred S. Pierce, Nazareth, for appellant.

Before OLSZEWSKI, MONTGOMERY and HOFFMAN, JJ.

MONTGOMERY, Judge:

The instant appeal, by LaVern McDavitt, arises from an Order of the trial court, later reduced to a Judgment, concerning several disputed estate issues. The Appellant is the named Executrix and sole heir under the Will of her son, Lonny L. McDavitt, who died on September 16, 1984. The appeal involves disputes which were created by objections which were filed against the first and partial accounting filed by LaVern McDavitt, as well as by a petition which was filed to have the Appellant removed as Executrix, and surcharged for alleged improprieties in connection with the Estate. Such objections and petition were instituted by Mary J. (McDavitt) Whiting, the widow of Lonny McDavitt, who asserted a claim against the Estate for a surviving spouse interest, pursuant to her rights under the Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 2507(3).

The record of this case reveals a bitter conflict between a mother and wife over the somewhat complicated assets of the decedent, many of which were commingled with assets of each of the two women. The discord has spawned significant litigation over many aspects of the Estate. We need only address those facts and aspects of the legal dispute which are germane to the issues to be resolved on appeal. The trial court denied the petition for removal of the Appellant and a surcharge, but it granted some requests by Ms. Whiting. In that regard, the trial court determined that certain sums should have been included as assets of the Estate in the accounting filed by the Appellant in her role as Executrix. It is from the latter rulings that the Appellant has appealed.

The contentions raised on appeal largely involve the resolution of disputed facts by the trial court. Thus, it is pertinent at the outset of our analysis to note that it is

well-established that the decisions of the trial judge in Orphans' Court matters will not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying the correct principles of law. See *In re Estate of Elias*, 429 Pa. 314, 239 A.2d 393 (1968); *In re DiPietro's Estate*, 306 Pa.Super. 238, 452 A.2d 532 (1982). The credibility of witnesses is to be evaluated by the hearing judge, and not the reviewing court. *In re Estate of Ziel*, 467 Pa. 531, 359 A.2d 728 (1976). Moreover, the record must be read on appeal in a light most favorable to the appellee. *Estate of Younger*, 314 Pa.Super. 480, 461 A.2d 259 (1983).

■ The first argument raised by the Appellant is that the trial court erred in failing to determine that an oral lease arrangement existed between the decedent and Travel–Rite Auto Sales and Service, Inc. (hereinafter referred to as "Travel–Rite"), for the operation of a Columbia, New Jersey garage and the use of a Freightliner truck. The record shows that at the time of his death, the decedent owned and operated a proprietorship dealing in fuel oil and gasoline sales. In the course of this business, he used vehicles which were owned by Marlon Leasing, Inc., a corporation then solely owned by his spouse, Mary J. (McDavitt) Whiting. Decedent's business was operated using the garage in Columbia, New Jersey, which was owned by Travel–Rite, and a garage in Greenwich Township, Burks County, Pennsylvania, owned by Knowlton Elms Corp. (hereinafter referred to as "Knowlton"). Both Travel–Rite and Knowlton were New Jersey corporations, of which Appellant LaVern McDavitt was the sole shareholder. A Freightliner truck, which was also the property of Travel–Rite, was also used in the decedent's business operations.

It was the testimony of the Appellant that there was an oral lease arrangement between the decedent and Travel–Rite for the operation of the Columbia facility, and the rental of the Freightliner. The widow, by her petition, disputed such an arrangement, and asserted that the Executrix improperly failed to include the value of Travel–Rite as

an asset of the Estate in her account, because the corporation was allegedly owned by the decedent at the time of his death. The trial court, after hearing all of the evidence, ruled that Travel–Rite was still the property of the Executrix. However, the trial court also found that the decedent had made substantial investments in Travel–Rite, as well as in Knowlton, in reliance upon an agreement with his mother to transfer these corporations to him. Further, the trial judge found that substantial steps had been taken to accomplish this transfer. Thus, he pointed out in his Opinion that the Executrix had sent letters to her accountant indicating that the transfers of the corporations were already made, agreements of sale had been signed, and the decedent had opened bank accounts on behalf of each corporation. Although stock transfers had never been accomplished prior to the decedent's death, the trial court determined that it would be unjust enrichment to allow the corporations to retain all such investments made by the decedent in contemplation of such transfers. Accordingly, the trial judge rejected the claim that the use of the Columbia, New Jersey facility and the Freightliner had merely been under a lease arrangement between the decedent and Travel–Rite, so that the value of such assets would not be includable in the Estate. Rather, the trial judge ruled that to avoid an unjust enrichment, the final account should reflect that $40,800.00 was owed by Travel–Rite to the Estate, for various payments made by the decedent.

We can discern no error in such findings and rulings by the trial court. They were all based upon clear evidence of record in the case. Such evidence was sufficient to overcome the testimony by the Executrix concerning a purported oral lease arrangement. It is noteworthy, in that regard, that the record showed that the decedent did not pay a periodic rental payment, as such, for the use of the New Jersey facility or the truck. Rather, he paid mortgage payments on the property, and loan payments on the vehicle. Such a financial history, together with the other evidence concerning the intent of the decedent and his mother to transfer the ownership of Travel–Rite to·him,

certainly rebutted her assertions of an oral lease arrangement. Accordingly, we reject the Appellant's assertion that the trial court erred in its determination that the Estate's accounting should show that her wholly owned corporation, Travel–Rite, owed the decedent sums advanced towards his purchase of its assets and/or stock.

In a related claim, the Appellant contends that the trial court had no jurisdiction to enter an order based upon the theory of unjust enrichment. In essence, the Appellant argues that the Orphans' Court jurisdiction is strictly limited, such that it could not make awards relating to title to personal property, or unjust enrichment. It is further maintained that issues concerning the ownership of a foreign corporation could only have been decided in other proceedings, possibly in the New Jersey courts. We cannot agree with that position.

 It is clear that the jurisdiction of the Orphans' Court is limited and is statutory in origin. *In re Estate of Soupcoff,* 329 Pa.Super. 130, 477 A.2d 1388 (1984). However, once it is determined that the Orphans' Court has jurisdiction to hear a case, it has the same authority as the whole Court of Common Pleas to resolve the variety of disputes which may be presented to it, within the context of its jurisdiction. On this point, see the discussion in *In re Estate of Reinert,* 367 Pa.Super. 147, 532 A.2d 832 (1987). In that case, an estate was held to be entitled to recover a specific sum of money stolen from the decedent, from the individual who took the money. Further, we are assisted in the resolution of this issue by the guidance of the Supreme Court of Pennsylvania in *Estate of Hahn,* 471 Pa. 249, 369 A.2d 1290 (1977), where the Court explained the power of the Orphans' Court to proceed according to equitable principles in cases properly before it. In the instant case, the trial court did not resolve a property dispute in a way which required any transfer of the shares or actual physical assets of Travel–Rite. Instead, it merely required the Executrix to include the amounts which had been previously paid by the decedent, toward the purchase of the assets of that

corporation, as a claim in the accounting of the assets in the decedent's Estate. That, as well as other assets, will merely be considered in computing the share of the Estate to which the surviving spouse may be entitled. We reject the contention that the trial court committed error in such circumstances.

We next address the Appellant's claim that the record did not establish unjust enrichment, creating a claim against Travel–Rite in the amount of $40,800.00, as discussed above, as well as a claim against Knowlton, amounting to $104,593.29. Quite simply, we find that the record provided substantial evidence to support the trial court's finding of unjust enrichment regarding both corporations. We have already discussed our conclusions as to the determinations reached by the trial judge concerning the amounts found due from Travel–Rite. Similar evidence supported the trial court's conclusions regarding the amounts which must be listed in the accounting of the Estate as due from LaVern McDavitt's Knowlton corporation. In essence, the record establishes that all of the monies advanced by the decedent for both real estate purchases and for improvements, to benefit Knowlton, were not lease payments, and were properly considered to have been payments on account toward the purchase of the shares of that corporation by the decedent. While the trial court found that both corporations remained the property of the Executrix at the time of the decedent's death, as actual stock transfers had not been accomplished, it would have been unjust to ignore the decedent's substantial payments made towards the purchase of both corporations, and the trial court did not err in crediting the Estate with the value of such payments. Therefore, we find no merit in the claims of the Appellant that the trial court acted incorrectly in its determinations of unjust enrichment in these matters.

■ Finally, we examine the argument by the Appellant that the trial court erred in its disposition of a claim asserted against the Estate by Petroleum Contractors, Inc., in the amount of $25,551.43. The Appellant contends that

this amount was treated as a proper claim by the trial court and credited as such in its decision as to the amount the Executrix was to include in her accounting. She further states that she subsequently justified her position in the case by settling the matter for a $12,000.00 payment by the Estate. She asks that the trial court's order be amended to reflect the correct amount paid by the Estate to Petroleum Contractors, Inc.

On the same issue, the widow asserts that the claim of Petroleum Contractors, Inc. for $25,551.43 was properly found by the trial court to be a debt of Knowlton, and not the Estate. Such a finding would seemingly be inconsistent with the alleged subsequent compromise of the debt by the decedent, and payment of it from the assets of the Estate.

Unfortunately, from the record, we cannot determine with assurance what the trial court concluded with respect to this debt. In an Order issued on March 15, 1988, denying and dismissing Appellant's post-trial motions, the trial court stated that it was adopting its Opinion dated September 1, 1987, on the issue, and concluded that the claim was properly included in the $104,593.29 that Knowlton owed the Estate. However, there was no discussion of the Petroleum Contractors', Inc. claim in the September 1, 1987 Opinion.

In light of the confusing state of the record on this particular issue, we are constrained to remand this case to the trial court for further clarification or consideration of its disposition of the Petroleum Contractors', Inc. claim. We note that the Appellant attacks the trial court's determination on this claim on the same unjust enrichment arguments we have discussed and rejected earlier in this Opinion. Accordingly, as our views regarding such arguments are apparent, we assume that the trial court can resolve this claim to the satisfaction of the parties, without further appellate review by our Court. Therefore, we shall not retain jurisdiction over the case at this time. After remand, and clarification and/or resolution by the trial court of the Petroleum Contractors', Inc. claim, as it affects the Estate,

if further appellate review is desired on that issue, it shall be sought in the context of a separate appeal.

The Judgment of the trial court is affirmed in part, and the case is remanded for further consideration and clarification, consistent with this Opinion. Jurisdiction is not retained.