J-A31019-15

2016 PA Super 17

| IN RE:  ESTATE OF SCHUMACHER, R., SR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| MARIANNE KREISHER | |
| Appellee | |
| v. | |
| KATHLEEN AND RALPH SCHUMACHER | |
| Appellants | No. 235 MDA 2015 |

Appeal from the Order Entered January 8, 2015
In the Court of Common Pleas of Columbia County
Civil Division at No(s): 165-OC-2014

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

OPINION BY LAZARUS, J.:                    **FILED JANUARY 29, 2016**

Ralph E. Schumacher ("Ralph") and Kathleen L. Schumacher ("Kathleen") (collectively, "Schumachers") appeal, *pro se*, from the order entered in the Court of Common Pleas of Columbia County, denying their petition for admission to probate of an after-discovered will.  Upon review, we affirm.

Robert H. Schumacher, Sr. ("Testator"), died on June 21, 2014, leaving a will dated November 18, 2010 ("2010 Will").  His wife, Marie, predeceased him in 2010.  Testator was survived by two sons, Ralph and Robert Schumacher, Jr. ("Bobby").  Pursuant to the terms of the 2010 Will,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Testator's entire estate was to pour over into a Special Needs Trust ("2010 Trust"), executed on the same date as the will, for the benefit of Bobby, who suffers from cerebral palsy and a mild intellectual disability. Testator named Marianne Kreisher, Esquire, as executrix of the 2010 Will and trustee of the 2010 Trust. The 2010 Will was submitted for probate on September 2, 2014, and Letters Testamentary were issued to Attorney Kreisher.

On October 27, 2014, the Schumachers filed a petition to probate an after-discovered will dated February 23, 2013 ("2013 Will"). The 2013 Will provided numerous specific bequests to multiple individuals and charities, notably Ralph and Kathleen, and gave the residue, in trust, to Bobby. Testator also executed a new Special Needs Trust for Bobby's benefit. Ralph and Kathleen were named co-executors and co-trustees. Both the 2013 Will and Special Needs Trust were drafted by Ralph.

On November 3, 2014, Attorney Kreisher filed an answer to the Schumachers' petition, in which she alleged that the 2013 Will was invalid due to Testator's lack of capacity, as well as undue influence exercised upon Testator by Ralph. The court held a hearing in the matter on January 5, 2015, after which it issued an order denying probate to the 2013 Will on the basis of undue influence.[1] The Schumachers filed a timely notice of appeal

_____

[1] Because it found that the 2013 Will was the product of undue influence, the trial court concluded that an analysis of testamentary capacity was not necessary. **See** Trial Court Opinion, 1/7/15, at 15 n.2. Nonetheless, the court noted its belief that, on the date the 2013 Will was executed, the
*(Footnote Continued Next Page)*

to this Court on February 6, 2015, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

The Schumachers raise the following issues for our review:

1.  Did the trial court err by finding Appellee Marianne E. Kreisher, Esquire, possessed legal standing to contest probate of the later will?

2.  Did the trial court err by failing to properly acknowledge and recognize the then-valid Power of Attorney of agent, Gregory Badger, in regards to principal, Robert H. Schumacher, Jr.?

3.  Did the trial court err by not enforcing the duly and properly acquired subpoena to Robert H. Schumacher, Jr., the only person mentioned in both the 2010 Will and Special Needs Trust and the 2013 Will and Special Needs Trust, . . . who was to attend and testify?

4.  Did the trial court err when it concluded that Testator "had no friends or family members with whom he had a close trusting relationship"?

5.  Did the trial court err when it concluded that "Testator had no church connections"?

6.  Did the trial court err when it concluded that Petitioner Ralph E. Schumacher's primary residence was in Berwick, PA?

7.  Did the trial court capriciously ignore the testimony of Donna Homiak, a retired registered nurse who had worked with patients suffering from dementia and had personally met and known and spent extended time with Testator, especially in the time frame in question, and could provide insight into Testator's testamentary capacity and whether he was subject to undue influence or not?

8.  Did the trial court err when it concluded that Testator suffered from a weakened intellect on February 23, 2013?

*(Footnote Continued)* ─────────────────

Testator was unaware of the natural objects of his bounty and did not know how he wished to dispose of his assets.

- 3 -

9. Did the trial court err when it concluded that Petitioner Ralph E. Schumacher was in a confidential relationship with Testator?

10. Did the trial court err when it concluded that the 2013 Will and 2013 Special Needs Trust were the products of undue influence and therefore invalid?

11. Did the trial court err when it concluded that Testator did not know the natural objects of his bounty on February 23, 2013?

12. Did the trial court err when it ignored the oral and written wishes of Marie A. Schumacher and the oral and written wishes of Testator, who both wanted their disabled son, Robert H. Schumacher, Jr., to live at the Schumacher Family Farm and Homestead located in Orange Township, Columbia County?

Although this matter came before the trial court as a petition to probate an after-discovered will, the court treated the case as a will contest due to the issues raised by Attorney Kreisher in her response to the Schumachers' petition. The appropriate scope and standard of review on appeal from a decree of the Orphans' Court adjudicating an appeal from probate is as follows:

> In a will contest, the hearing judge determines the credibility of the witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*In re Bosley*, 26 A.3d 1104, 1107 (Pa. Super. 2011) (internal citations omitted).

The Schumachers first challenge Attorney Kreisher's standing to contest the probate of the 2013 Will. This claim is both waived and

meritless. First, it was the Schumachers themselves who named Attorney Kreisher as the respondent in their petition to probate the 2013 Will. As such, they cannot now be heard to complain that Attorney Kreisher is not properly a party to the action. Second, challenges to a party's standing must be raised at the common pleas level or they are waived. ***Burke v. Independence Blue Cross***, 103 A.3d 1267, 1271 (Pa. 2014). The Schumachers failed to raise the issue of Attorney Kreisher's standing in the trial court and, therefore, have waived the claim. Finally, Attorney Kreisher has the requisite standing in this matter. Section 908 of the Probate, Estates and Fiduciaries ("PEF") Code provides as follows:

§ 908. Appeals.

(a) When allowed. --

Any party in interest seeking to challenge the probate of a will or who is otherwise aggrieved by a decree of the register, *or a fiduciary whose estate or trust is so aggrieved*, may appeal therefrom to the court within one year of the decree: Provided, That the executor designated in an instrument shall not by virtue of such designation be deemed a party in interest who may appeal from a decree refusing probate of it.

20 Pa.C.S.A. § 908(a) (emphasis added). Attorney Kreisher is the named trustee of the 2010 Trust, which is the sole beneficiary named in the 2010 Will. Because Attorney Kreisher's trust would have been aggrieved by the probate of the 2013 Will, she possessed standing to challenge its validity. Accordingly, the Schumachers are entitled to no relief.

The Schumachers next assert that the trial court erred by failing to properly acknowledge and recognize Gregory Badger as agent under a power

of attorney granted by Bobby Schumacher. However, the Schumachers, in their brief, do not explain how this issue is relevant to the trial court's determination as to the validity of the 2013 Will, or how they are aggrieved by this alleged error. Moreover, our review of the record does not demonstrate that the Schumachers ever requested the trial court to recognize Gregory Badger as Bobby's agent. Therefore, this claim is both irrelevant and waived.

Next, the Schumachers assert that the trial court erred by not enforcing a subpoena issued to Bobby Schumacher. The Schumachers assert that Bobby's testimony at trial was "crucial, important, and necessary" and that "trial should not have gone on without the presence (attendance) and testimony" of Bobby Schumacher. Brief of Appellants, at 22. However, the record reveals that the Schumachers, through their counsel, Gregory Stuck, Esquire, abandoned any claim with regard to Bobby's unavailability during the following exchange with the trial court:

> MR. STUCK: . . . I do have one serious problem which has been the inability to produce [Bobby] at these proceedings. I understand that there's a proceeding with Area Agency on Aging Office coming up on January 23rd and I'd ask the record be kept open for us to quiz [Bobby] at that point in time.
>
> MS. KREISHER: I have no objection to that.
>
> THE COURT: Yeah, I'm not sure –
>
> MR. STUCK: Unless you've heard enough already.
>
> MS. KREISHER: What is the offer of proof?
>
> THE COURT: I guess what's the offer? I'm fine with that[.]

. . .

THE COURT:  So what do you propose with Bobby?

MR. STUCK:  I want to know – I'm going to make the not so wild assumption that Bobby was fully aware of what was going on in these processes and he would be able to have meaningful input for the Court as to whether or not anybody was forcing his dad to do anything.

THE COURT:  It's up to you, if you want to keep it open until then.

MS. KREISHER:  Your Honor, I don't have an objection with keeping it open, but you have met with Bobby, Ralph is certainly aware of Bobby's capabilities and I really don't see the benefit.

MR. STUCK:  I'll withdraw my request, Your Honor.  I have spoken with my client, he's indicated he's not sure what kind of medications the Area Agency on Aging might have his brother on.

THE COURT:  We could ask him.

MS. KREISHER:  Yep, I have no problem keeping it open.

THE COURT:  What do you want to do?  I mean, I don't care.

MR. STUCK:  No, we'll be satisfied with the closing of the record.

N.T. Hearing, 1/5/15, at 315-17.

As the foregoing excerpt clearly demonstrates, both the trial court and opposing counsel, Attorney Kreisher, provided the Schumachers ample opportunity to insist that the record be kept open to incorporate testimony from Bobby Schumacher.  However, the Schumachers chose to withdraw their request and allow the record to close without taking Bobby's testimony. Accordingly, this claim is waived.

The Schumachers' next three claims involve disagreements with factual findings made by the trial court. In their brief, the Schumachers dispute those findings by quoting from trial testimony that they believe contradicts the court's findings. However, they cite to no case law nor put forth any argument explaining how the court's alleged errors affected its ultimate ruling as to the validity of the 2013 Will. This Court has repeatedly held that failure to develop an argument with citation to, and analysis of, relevant authority waives that issue on review. *Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005); Pa.R.A.P. 2119. Accordingly, these claims are waived.[2]

The Schumachers next assert that the trial court "capriciously ignored" the testimony of Donna Homiak, a retired registered nurse, whom they assert provided insight into the Testator's testamentary capacity and whether he was subject to undue influence. This claim garners the Schumachers no relief. First, as with the claims addressed above, the Schumachers simply quote from the notes of testimony without developing an argument as to how the cited testimony supports their claim. As a result, they have waived appellate review. *See id.* Second, a review of Homiak's

_____

[2] Even if the claims were not waived, they are meritless. The trial court's findings that: (1) Testator had no family or friends with whom he had a close trusting relationship; (2) Testator had no church connections; and (3) Ralph's primary residence was in Berwick, PA are supported by the record – notably, in two instances, by the testimony of Ralph himself.

testimony reveals that she barely knew the Testator, having met him only twice. On the first occasion, she testified that they spoke mostly of the past and she was, therefore, unable to tell whether he was oriented. On her second meeting with the Testator, she testified that she observed him operating a back hoe and spoke to him about his leg pain. Homiak's testimony sheds no light on Testator's testamentary capacity or whether Ralph unduly influenced him to execute the 2013 Will. As such, the claim is meritless.

The Schumachers' next three claims address the court's determination that Testator was the subject of undue influence practiced upon him by Ralph. The Schumachers assert that the Appellee failed to establish either the weakened intellect or confidential relationship prongs of the undue influence test.[3] We disagree.

Our Supreme Court has defined undue influence as follows:

The word "influence" does not refer to any and every line of conduct capable of disposing in one's favor a fully and self-directing mind, but to control acquired over another that virtually destroys his free agency . . . . In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind, . . . fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will.

---

[3] The Schumachers do not contest the trial court's finding that they receive a substantial benefit under the 2013 Will.

*In re Estate of Ziel*, 359 A.2d 728, 733 (Pa. 1976) (citations omitted). A party claiming undue influence must establish, by clear and convincing evidence, that: (1) when the will was executed the testator was of weakened intellect and (2) that a person in a confidential relationship with the testator (3) receives a substantial benefit under the will. *Id.* at 734. Once this prima facie case has been established, the burden shifts to the proponent to refute the charge of undue influence. *Id.*

The weakened intellect necessary to establish undue influence need not amount to testamentary incapacity. *In re Estate of Clark*, 334 A.2d 628, 634 (Pa. 1975). "Although our cases have not established a bright-line test by which weakened intellect can be identified to a legal certainty, they have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation." *In re Estate of Fritts*, 906 A.2d 601, 607 (Pa. Super. 2006). Moreover, because undue influence is generally accomplished by a gradual, progressive inculcation of a receptive mind, the "fruits" of the undue influence may not appear until long after the weakened intellect has been played upon. *Clark*, 334 A.2d at 634. Accordingly, the particular mental condition of the testator on the date he executed the will is not as significant when reflecting upon undue influence as it is when reflecting upon testamentary capacity. *Id.* More credence may be given to remote mental history. *Id.*

In concluding that the Testator suffered from a weakened intellect, the trial court noted the following:

Testator had been a strong-willed man all of his life. [For many years, he owned and operated a private sewage treatment plant that served a residential area he had developed on his farm property.] However, by February 23, 2013, medical testimony established that [T]estator had been in the throes of progressive dementia for approximately three years, with the symptoms of cognitive impairment, loss of judgment, and loss of memory. When he saw his family doctor, [Paul Saloky, M.D.,] in January 2013, his dementia had progressed to moderate dementia. Moreover, during that examination, [T]estator was malnourished and suffering from delirium as a result of an infection. He was hospitalized for a short period and signed the [2013 Will] within a month of the hospitalization. By April 2013 when [Dr. Saloky] examined him again, the [Testator] was physically stronger but ["his dementia was certainly no better." N.T. Trial, 1/5/15, at 25].

[Dr. Saloky's] diagnosis was verified by the testimony of the treatment plant operator[, John Bauer,] who had known and worked with [T]estator regularly for almost thirty (30) years. [Bauer] noticed, from at least 2011, [T]estator's increasing inability to maintain the plant. He said that [T]estator's mind seemed to be slipping. The change was dramatic, to the point where [Bauer] had to terminate their business relationship in the spring of 2013. The [Department of Environmental Protection] representative who dealt with the treatment plant for many years made similar observations, as did a township supervisor. Testator's weakened intellect was further substantiated by the local police chief[,] who received numerous out of character bizarre calls from [T]estator throughout 2011 and 2012. The chief also noted that, uncharacteristically, [T]estator allowed a Megan's Law registrant to live with him in 2012, resulting in the theft of [T]estator's guns, jewelry, and coins. After a two month investigation, the thief was arrested February 26, 2013, three days after the date of the will. The thief and his two relatives were beneficiaries in the will.

Trial Court Opinion, 1/7/15, at 11-13. In addition, Dr. Saloky testified as follows on direct examination by Appellee's counsel with respect to Testator's ability to comprehend the will and trust on the date of execution:

Q:  Based on your diagnosis of [Testator's] treatment in January of 2013 and in April of 2013, had his dementia progressed to the point where he would not have been able to have lucid moments and understand complicated matters?

A:  Yes.

Q:  Can you give an opinion within a reasonable degree of medical certainty whether [Testator] who presents with the advanced level of dementia suffered by him would have had the capacity to understand and execute a complicated estate plan on February 23rd, 2013?

. . .

[A]:  With his level of dementia at that point in time, moderate dementia with his disabilities with cognition, language skills and comprehension, I do not believe he would be able to understand that.

. . .

Q:  And looking at Exhibit 1, the [2013 Will], would he have been able to understand that document?

A:  No.

. . .

A:  I think he'd understand that it was a will but I think the contents would be very complicated for someone of this level of dementia to understand.

Q:  Take a moment to review Exhibit 2, and this is the special needs trust that was signed on February [23,] 2013.  And, Doctor, how many pages does this document consist of?

A:  12 pages.

Q:  And turning back to page 11, how many sections or paragraphs does this document consist of?

A:  16.

Q: Would [Testator] have been able to understand the contents of this document based on your exam and diagnosis of his dementia?

A: No.

N.T. Trial, 1/5/15, at 29-31.

A confidential relationship exists "when the circumstances make it certain that the parties did not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Clark*, 334 A.2d at 633, quoting *Leedom v. Palmer*, 117 A. 410 (Pa. 1922). "A confidential relationship is created between two persons when it is established that one occupies a superior position over the other – intellectually, physically, governmentally, or morally – with the opportunity to use that superiority to the other's disadvantage." *In re Estate of Thomas*, 344 A.2d 834, 836 (Pa. 1975). "[S]uch a relationship is not confined to a particular association of parties, but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Estate of Keiper*, 454 A.2d 31, 33 (Pa. Super. 1982), quoting *Silver v. Silver*, 219 A.2d 659, 662 (Pa. 1966). While a parent/child relationship does not automatically establish a confidential relationship, it is a factor to be considered. *Biddle v. Johnsonbaugh*, 664 A.2d 159, 162 (Pa. Super. 1995).

As to this prong of the undue influence test, the trial court found as follows:

The confidential relationship here is striking. Before the dementia struck, [T]estator and [Ralph] had a strained relationship. After the dementia hit and particularly after [Ralph] found that he was not included in the [2010 Will], the petitioners became much more involved in [T]estator's life. [Ralph] was at [T]estator's house almost every day and slept there several times a week. [Ralph] became a co-owner of [T]estator's bank account. [Ralph] became [T]estator's representative for the treatment plant with DEP and the township, writing letters and attending meetings and being the spokesman for [T]estator. Most significantly, [Ralph] (with [Kathleen]) became [T]estator's legal advisor, going so far as to write a new will and trust[4] and gather [Ralph and Kathleen's] friends as witness[es] to the will's signing. Petitioners went far beyond son, daughter-in-law, and helpers to legal representatives, business representatives, confidants, and advisors. Petitioners knew that [T]estator had progressive dementia which resulted in increasingly impaired cognition, loss of judgment, and loss of memory. They also knew that over a year before February 23, 2013, [Testator] had refused to change his will, although pressed to do so by petitioners.[5]

Trial Court Opinion, 1/7/15, at 14-15.

---

[4] "It will weigh heavily against the proponent on the issue of undue influence when the proponent was either the scrivener of the will or present at the dictation of the will." *Burns v. Kabboul*, 595 A.2d 1153, 1163 (Pa. Super. 1991).

[5] Attorney Richard Shoch testified that he was present at two meetings in 2011 at which Ralph attempted to have a new will drafted for the Testator. Attorney Shoch testified that Ralph expressed his displeasure with the Testator's 2010 Will (in which Ralph was not named) and sought certain changes, particularly with respect to the disposition of Testator's residence. Attorney Shoch ultimately requested to meet privately with the Testator, after which he concluded that the Testator did not want to make the changes sought by Ralph and, as a result, discontinued his representation.

Our review of the trial transcript indicates that the findings of the trial court are amply supported in the record. Based on the foregoing, we conclude that the trial court committed no error of law or abuse of discretion in concluding that: (1) Testator suffered from a weakened intellect; (2) a confidential relationship existed between Ralph and the Testator; and (3) Appellee established a prima facie case of undue influence that was not rebutted by the Schumachers.[6]

Finally, the Schumachers claim that the trial court ignored the oral and written wishes of Testator and his wife, Marie, that Bobby be guaranteed a life estate in the Schumacher Family Farm. This issue is moot, as the Testator's estate will be distributed pursuant to the terms of the 2010 Will, under which his entire estate, including the Schumacher Family Farm, is distributed in trust for Bobby's benefit.

_____

[6] Because we conclude that the trial court did not err in invalidating the 2013 Will on the basis of undue influence, we need not address the Schumachers' claim regarding the trial court's finding as to testamentary capacity.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/29/2016