J-A09009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF MICHAEL E. LEHMAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : : : | |
| APPEAL OF: MICHAEL P. LEHMAN AND LISA ANN BOGO | : : : : | |
| | : | No. 341 MDA 2022 |

Appeal from the Order Entered January 25, 2022
In the Court of Common Pleas of Franklin County
Orphans' Court at No(s): 187-OC-2014

BEFORE: PANELLA, P.J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED: JULY 24, 2023**

Michael P. Lehman ("Michael") and Lisa Ann Bogo ("Lisa") (collectively, "Petitioners") appeal from the order affirming the Register of Wills's decree, which admitted for probate the July 27, 2017 Will executed by Michael E. Lehman, Deceased ("Decedent"). Petitioners, who had been disinherited by the 2017 Will, have repeatedly challenged the validity of the 2017 Will throughout this contentious litigation. They specifically asserted the 2017 Will was the result of undue influence by Decedent's business associate, Julie Fitchet. Through the instant appeal, Petitioners raise the issue of Fitchet's undue influence once more. Petitioners also challenge the trial court's grant of summary judgment in favor of Fitchet based on its finding that Decedent did not lack testamentary capacity to execute the 2017 Will. Further,

Petitioners contest the court's denial of the parties' proposed settlement agreement. After careful review, we affirm.

Petitioners are the adult children of Decedent. Decedent was the founder and sole shareholder of American Micro Industries, Inc. ("AMI"), in Chambersburg, Pennsylvania, and the sole owner of Four Forty Ramsey, LLC ("440"), the limited liability company which held the title to the AMI property. Michael joined AMI in 2005 and "eventually became head of one of the company's two divisions." Findings of Fact and Conclusions of Law, 1/25/22, ¶ 9.

Decedent first met Fitchet in 2004, while she was attending college and working as a server in a restaurant Decedent frequented. Fitchet completed her degree in 2006 and worked as a dementia unit program director in a nursing home until January 2013. She later applied to AMI and was hired as a division administrator in March 2013. Fitchet was promoted to general manager by the end of that year. *See id.*, ¶¶ 11-17.

In March 2014, Decedent accused Michael of stealing from AMI. As a result, Michael resigned from his position and Decedent subsequently promoted Fitchet to chief operating officer.

In October 2014, Decedent sustained a serious brain injury after falling from a bar stool. He required hospitalization, rehabilitation, and additional occupational therapy for the injury. The day after the fall, Petitioners

temporarily took over AMI pursuant to powers of attorney the Decedent had previously executed. Petitioners fired Fitchet almost immediately.

Decedent's relationship with Petitioners declined significantly after his injury. Decedent received little to no contact from Petitioners after that time. However, Decedent maintained frequent contact with Michael's two children ("Grandchildren").[1]

The trial court set forth what next transpired as follows:

42. [Lisa] had blocked Fitchet's number on [Decedent's] phone. Nevertheless, in the middle of January 2015[, Decedent] contacted Fitchet to ask for help. He indicated that [Petitioners] were stealing the business from him and holding him prisoner in York[, where Petitioners had taken him to stay with Petitioners' maternal grandmother, with instructions not to drive Decedent to AMI or to Chambersburg].

43. At the suggestion of his banker, [Decedent] contacted Attorney John Miller in York on February 2, 2015. They met on February 5, 2015. The meeting was attended only by [Decedent] and the lawyer.

44. [Decedent] related that he suffered a brain injury in October. He further articulated his belief that [Petitioners] were trying to steal his business and were keeping him in York against his will. [Decedent] said that he wanted to revoke the powers of attorney [Petitioners] were using to run the business.

45. Attorney Miller drafted the revocations and had them executed. However, because of the strange nature of [Decedent's] story, as well as his recent brain injury, Attorney Miller refused to deliver them until he could get independent verification of [Decedent's] allegations. He also arranged for [Decedent] to undergo a psychological evaluation.

….

---

[1] Lisa does not have any children.

47. [Decedent] was evaluated by [Ray W. Christner, Psy.D.] on February 27 and March 17, 2015. The purpose of the evaluation was to determine whether [Decedent] had capacity to make independent decisions.

48. Dr. Christner performed an extensive evaluation of [Decedent].

….

50. [Dr. Christner] diagnosed [Decedent] with mild neurocognitive disorder, alcohol abuse disorder (early remission), and parent/child relationship problems.

51. Dr. Christner concluded that [Decedent] was capable of making independent decisions regarding his care and his finances.

*Id.*, ¶¶ 42-51.

Shortly after returning to work in February 2015, Decedent terminated Michael's employment. Decedent then asked Fitchet to return to work. At that time, Fitchet had another job and "was emphatic with [Decedent] that she would only return to AMI if [Decedent] would make her a partner and ensure that his children would never have anything to do with the business." *Id.*, ¶ 64. Ultimately, in August 2015, Decedent and Fitchet executed two agreements relating to the businesses ("the Operating Agreements"), under which Fitchet obtained a 50% interest in AMI and 440. The Operating Agreements included "a shareholder's agreement [pertaining to AMI] which contained a noncompetition provision, mutual covenants regarding the disposition of the parties' stock, and a requirement that [Grandchildren] be brought into the business if, and when, they desired." *Id.*, ¶ 67. The Operating

Agreements also include the following provision governing the death of a shareholder: "In the event of the death of a Shareholder during the term of this agreement, the legal representative of his/her estate shall be required to transfer, without consideration, all of decedent's share of stock of the Corporation to the surviving Shareholder." Petition for Pre-Trial Relief, 2/27/19, Exhibit A (Agreement).[2]

With aid of legal counsel, Decedent executed a Will on July 27, 2017. The 2017 Will appointed Farmers and Merchants Trust Company of Chambersburg and Jan G. Sulcove, Esquire ("Executor"), to serve as co-executors of his estate. Relevant to this appeal, the Will contains the following provisions:

> 3. <u>Payment of Final Expenses.</u> … The estate, inheritance and similar taxes assessable on my death (including taxes on assets not passing under this Will) shall be paid as a cost of administering my estate and my Co-Executors shall not request any beneficiary to pay any part of such tax.
>
> 4. <u>Specific Bequest.</u> I hereby give and specifically devise all of my right, title and interest in the real property located at and known as [] Alexander Avenue, Chambersburg, Pennsylvania to Julia Lachewitz Lehman.[3] If this specific bequest fails for any reason, then such real property shall constitute a portion of my residual estate as set forth in Paragraph 5.

---

[2] The exhibits referenced in the Petition for Pre-Trial Relief were admitted through a praecipe filed on March 4, 2019. For ease of reference, we will refer to these exhibits, to the extent necessary, as though they were attached to the original filing.

[3] Julia is the mother of Grandchildren. Shortly after executing the 2017 Will, Decedent transferred the property to Julia by deed to serve as a residence for Julia and Grandchildren.

5. Residual Estate. I give and devise the rest, residue and remainder of my estate, including all of my real and personal property not specifically devised herein, to [Grandchildren], to be held and administered by the Michael E. Lehman Testamentary Trust as set forth in Paragraph 6 below.

6. Testamentary Trust. I hereby appoint Farmers and Merchants Trust Company of Chambersburg as Trustee of the Michael E. Lehman Testamentary Trust (the "Trust"), the corpus of which shall be initially comprised of the residual estate gifted and devised to [Grandchildren], as set forth in Paragraph 5. The Trust shall be administered as follows.

a. My Trustee shall hold and accumulate the income from the Trust until the oldest Beneficiary attains the age of 18, and at that time establish two funds within the Trust, one fund for each Beneficiary. If either of my Beneficiaries require distributions from their respective funds for their health, safety, education and welfare, my Trustee may make such distributions from accumulated income or principal, as determined by the Trustee in its sole discretion, for such Beneficiary's benefit by paying such needed amount directly to the provider of such service. Under no circumstances shall my Trustee provide any income or principal of the Trust to Michael P. Lehman or Lisa Ann Bogo, regardless of whether such amounts are for the benefit of the Beneficiaries.

* * *

f. The Trustee shall have the following powers, in addition to, but not in limitation of those granted by Pennsylvania law: … (xiv) my Trustee shall not release any income or principal to my Beneficiaries hereunder if the Trustee reasonably determines that either Michael P. Lehman or Lisa Ann Bogo would receive any benefit whatsoever, directly or indirectly (including relief from normal parental expenditures that Michael P. Lehman could reasonably pay), and the Trustee may require that any distribution is paid directly to a provider of goods or services in order to avoid a potential benefit to Michael P. Lehman or Lisa Ann Bogo.

* * *

> 7. <u>Intentional Omission and Exclusion.</u> This Will intentionally does not provide for any gift, bequest or devise to my children, Michael P. Lehman and Lisa Ann Bogo. My omission and exclusion of any gift, bequest or devise to Michael P. Lehman and/or Lisa Ann Bogo is express, intentional and purposeful. To the extent that either Michael P. Lehman and/or Lisa Ann Bogo are found to be entitled to any gift, devise or bequest hereunder or by law, both Michael P. Lehman and/or Lisa Ann Bogo shall be deemed to have predeceased me without issue, and any distribution to which they are otherwise entitled shall be part of my residual estate.

Brief in Support of Motion for Summary Judgment, 9/21/20, Exhibit 25 (Last Will of Michael E. Lehman).

Decedent died on June 10, 2018. Executor filed a petition for grant of letters testamentary for the estate.[4] On July 12, 2018, the Will was admitted to probate and the Register of Wills issued letters testamentary to Executor.

This yearslong litigation has an extensive procedural history. We will highlight herein the history relevant to instant appeal. In July 2018, before the Will had been admitted to probate, Petitioners filed a petition to stay distribution of Decedent's assets and for review of the validity of Decedent's trust. Petitioners alleged that if Decedent died testate, the will had not been probated. Petitioners also claimed Decedent lacked testamentary capacity and Fitchet had exercised undue influence on Decedent. Petitioners therefore

---

[4] In the petition, Executor alleged that Farmers and Merchants Trust Company of Chambersburg had renounced their right to serve as co-executor.

requested that the court stay distribution of Decedent's assets and declare any will or trust made after October 10, 2014, invalid.[5]

The trial court noted a personal conflict requiring recusal and stayed any additional distribution until the case could be transferred to another judge.[6] Fitchet filed preliminary objections. During a hearing on the petition, the parties entered stipulations. Relevantly, the parties agreed to stay the sale or disposal of real and personal property from the estate. Fitchet agreed to continue her role at AMI and to not dispose of or convey her ownership interest. The parties also agreed the petition would serve as objections to probate of the Will and the parties therefore would not need to file further responsive pleadings.

_____

[5] Decedent had also executed a will on October 26, 2015, which Petitioners seek to invalidate for the same reasons. In the 2015 Will, Decedent left his estate to Grandchildren, exclusive of his interests in AMI and 440, to be held in a trust. He named Farmers and Merchants Bank and Trust Company of Chambersburg as his executor, and Fitchet as the alternative executor. **See** Brief in Support of Motion for Summary Judgment, 9/21/20, Exhibit 1 (Last Will and Testament dated Oct. 26, 2015).

Before that date, a will executed by Decedent on April 24, 2012, would have controlled. Under the 2012 Will, Decedent had directed his estate to be divided between Michael and Lisa in equal shares, with the exception of a particular parcel of real property he bequeathed to an individual who is not involved in the instant dispute. Michael and Lisa would also serve as co-executors under the 2012 Will. **See id.**, Exhibit 2 (Last Will and Testament dated Apr. 24, 2012).

[6] Because all available Franklin County judges recused from the case, the case was reassigned to a Cumberland County judge.

On February 27, 2019, Executor filed a petition for pre-trial relief seeking, in part, authorization to convey Decedent's interests in AMI and 440 pursuant to the terms of the Operating Agreements. Petitioners opposed the request, again citing undue influence or lack of capacity. In May 2019, the parties reached a partial agreement, which the trial court adopted. In particular, Petitioners were granted the right of first refusal or the option to purchase Decedent's personal property at its appraised value.

On July 11, 2019, Petitioners filed an appeal from the Register of Wills' decree, which admitted Decedent's July 27, 2017 Will to probate and granted letters testamentary to Executor. On the same date, Petitioners filed an amended and restated petition to stay distribution of Decedent's assets.[7] Petitioners alleged Decedent suffered diminished capacity prior to his death, lacked testamentary capacity, lacked capacity to contract with Fitchet, and was subject to undue influence by Fitchet. Additionally, Petitioners filed a petition for appointment of a guardian *ad litem* ("GAL") to represent Grandchildren's interests under the 2017 Will.[8]

---

[7] We note that in the amended and restated petition, Petitioners do not explicitly challenge the 2015 Will. However, because Petitioners generally allege Decedent began suffering from a diminished capacity in 2014, we will address Petitioners' undue influence and lack of testamentary capacity claims with reference to both the 2015 and 2017 Wills.

[8] The trial court granted the petition and appointed Andrew J. Benchoff, Esquire, as Grandchildren's GAL.

Fitchet objected to the amended and restated petition, in part, on the basis that Petitioners lacked standing to challenge the Operating Agreements, as they were not parties to the agreements or third-party beneficiaries. After additional pleadings and a hearing, the trial court held that transfers of AMI and 440 under the Operating Agreements constituted *inter vivos* transfers, and the would-be intestate heirs did not have standing to challenge those transfers; only Executor had standing. However, because a successful challenge to the Will could change the individuals acting as executors or personal representatives, the court stayed all proceedings related to the Operating Agreements pending the Will challenge.

Fitchet filed a motion for summary judgment on September 21, 2020, seeking dismissal of Petitioners' amended and restated petition. Fitchet argued therein that Petitioners failed to establish that she exerted undue influence over Decedent or that Decedent lacked testamentary capacity at the time he executed the 2017 Will. Executor likewise filed a motion for summary judgment and relied on Fitchet's motion. Petitioners filed a response. On March 19, 2021, the trial court entered an order granting in part and denying in part the motion for summary judgment. The court found no issue of material fact concerning Decedent's testamentary capacity and granted summary judgment in favor of Fitchet on that issue. The court denied summary judgment on the issue of undue influence.

With the court's permission, Petitioners subsequently filed a second amended and restated petition to stay. The matter proceeded to a non-jury trial in September 2021 at which Petitioners and Fitchet, as well as Executor and Grandchildren's GAL appeared. During the five-day trial, the trial court heard testimony from the parties, several AMI employees, various medical professionals, and the attorney who prepared the 2017 Will, among others.

At the start of the final day of trial, Fitchet's counsel explained that Fitchet and Petitioners were engaged in settlement discussions and asked the court to delay issuing an order. *See* N.T., 9/17/21, at 3. The court responded by stating its intention to dictate its findings of fact and conclusions of law and to draft an order, but the court agreed to delay filing. *See id.* However, the trial court explained that any settlement agreement would need to be approved by the court. *See id.* at 27.

In its findings of fact and conclusions of law, the trial court stated that Decedent had clearly articulated the two goals of his Will: 1) to provide for Grandchildren and 2) to disinherit Michael and Lisa. *See* Findings of Fact and Conclusions of Law, 1/25/22, ¶ 69. The court allowed the parties to continue with settlement discussions and advised that an agreement should provide a benefit to Grandchildren.

The trial court approved another extension of time for the parties to reach an agreement. On January 21, 2022, the parties filed a petition to approve settlement agreement. In the petition, the parties allege that the

Department of Revenue will apply a 15% tax rate to the assets in the inheritance tax returns. The parties further alleged that the 15% tax rate renders the estate insolvent and without the ability to pay the tax. Regarding the Operating Agreements and the relative ownership interests in AMI and 440, the settlement agreement provided as follows:

2. Each of the undersigned parties agree that [Fitchet] shall retain ownership of the fifty percent (50%) interest in AMI and the fifty percent (50%) interest in [440] that were transferred by Decedent to her on August 12, 2015 pursuant to the Operating Agreements.

….

4. Each of the undersigned parties agrees that, upon acceptance by the Court of the Petition implementing the terms of this Settlement Agreement, the fifty percent (50%) ownership interest in AMI presently in the possession of the Estate and the fifty percent (50%) ownership interest in [440] presently in the possession of the Estate shall be distributed by the Executor to the [Petitioners] as joint tenants with right of survivorship. In accordance with this distribution, the fifty percent (50%) ownership interest in AMI presently in the possession of the Estate and the fifty percent (50%) ownership interest in [440] presently in the possession of the Estate shall not be subject to any terms of the Operating Agreements providing for a different distribution; the fifty percent (50%) ownership interest in AMI presently in the possession of the Estate and the fifty percent (50%) ownership interest in [440] presently in the possession of the Estate shall be treated as probate assets but shall not be subject to the distribution provisions of the probated Will.

….

10. Each of the undersigned parties agrees that all terms of the Operating Agreements are valid and enforceable, with the exception of the terms of the Operating Agreements providing for transfer of interests in AMI and [440] upon the death of one of the owners to the extent such terms are not consistent with the terms of this Agreement.

- 12 -

Joint Petition to Approve Settlement Agreement, 1/21/22, Exhibit A (Settlement Agreement) at ¶¶ 2, 4, 10.

The parties also agreed, in relevant part, that Executor shall pay the Pennsylvania inheritance taxes from the Estate assets other than the interests in AMI and 440, and that Fitchet and Petitioners will equally divide any additional taxes, penalties, or interest due. *See id.* at ¶ 8. Additionally, Fitchet and Petitioners agreed to apply for a refund of Pennsylvania inheritance taxes, the receipt of which would be divided between Fitchet and Petitioners in the "amounts they paid because inheritance taxes, penalties, or interest are due and there are not sufficient funds in the Estate." *Id.* at ¶ 9.

The trial court denied the joint petition because the agreement did not provide a benefit for Grandchildren. *See* Order, 1/25/22. The court also filed its previously-drafted findings of fact and conclusions of law. In the order, the trial court also affirmed the decree of the Register of Wills which admitted the 2017 Will to probate.

Petitioners filed a motion to reconsider, primarily arguing that the trial court disregarded the relevant testimony and evidence supporting their undue influence claim. Petitioners also argued the trial court: improperly focused on the events at the time Decedent implemented the changes to his 2017 Will rather than the time he made the decisions; exhibited bias against Petitioners;

and abused its discretion by denying the proposed settlement agreement, which left the estate insolvent. This timely appeal followed.[9]

This Court's standard of review in a will contest is restricted to determining whether the trial court's factual findings are supported by the record:

> In a will contest, the hearing judge determines the credibility of witnesses. The record is to be reviewed in the light most favorable to appellee, and review is to be limited to determining whether the trial court's findings of fact were based upon legally competent and sufficient evidence and whether there is an error of law or abuse of discretion. Only where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence may the court's findings be set aside.

*In re Estate of Schumacher*, 133 A.3d 45, 49-50 (Pa. Super. 2016) (citation omitted).

In their first claim, Petitioners assert that Decedent was subject to Fitchet's undue influence at the time Decedent executed the Will. *See* Petitioners' Brief at 32-50. They therefore assert that the trial court erred in affirming the Register of Wills's admission of the 2017 Will to probate.

"In making a will an individual may leave his or her property to any person or charity, or for any lawful purpose he or she wishes, unless he or she lacked mental capacity, or the will was obtained by forgery or fraud or undue influence, or was the product of a so-called insane delusion." *In re Estate of*

---

[9] Grandchildren's GAL joined Petitioners' appellate brief in its entirety.

*Nalaschi*, 90 A.3d 8, 11 (Pa. Super. 2014) (citation and quotation marks omitted).

> The resolution of a question as to the existence of undue influence is inextricably linked to the assignment of the burden of proof. Once the proponent of the will in question establishes the proper execution of the will, a presumption of lack of undue influence arises; thereafter, the risk of non-persuasion and the burden of coming forward with evidence of undue influence shift to the contestant. The contestant must then establish, by clear and convincing evidence, a *prima facie* showing of undue influence by demonstrating that: (1) the testator suffered from a weakened intellect; (2) the testator was in a confidential relationship with the proponent of the will; and (3) the proponent receives a substantial benefit from the will in question. Once the contestant has established each prong of this tripartite test, the burden shifts again to the proponent to produce clear and convincing evidence which affirmatively demonstrates the absence of undue influence.

*In re Estate of Byerley*, 284 A.3d 1225, 1237 (Pa. Super. 2022) (citations and internal quotation marks omitted).

The trial court rejected the Petitioners' claim, holding that while Fitchet received a substantial benefit under the Will, Decedent did not suffer from a weakened intellect, and Fitchet did not have a confidential relationship with Decedent. **See** Trial Court Opinion, 1/25/22, at 8-9 (unnumbered).

With respect to weakened intellect, this Court has observed the following:

> The weakened intellect necessary to establish undue influence need not amount to testamentary incapacity. Although our cases have not established a bright-line test by which weakened intellect can be identified to a legal certainty, they have recognized that it is typically accompanied by persistent confusion, forgetfulness and disorientation. Moreover, because undue influence is generally accomplished by a gradual, progressive inculcation of a receptive mind, the "fruits" of undue influence may not appear

until long after the weakened intellect has been played upon. Accordingly, the particular mental condition of the testator on the date he executed the will is not as significant when reflecting upon undue influence as it is when reflecting upon testamentary capacity. More credence may be given to remote mental history.

*In re Estate of Schumacher*, 133 A.3d at 52 (internal citations and some quotation marks omitted).

Petitioners contend the trial court misapplied this standard by focusing on the "the moment [Decedent] signed the 2015 and 2017 Wills, and ignor[ing] the weight of the evidence that demonstrated weakened intellect." Petitioners' Brief at 34. Instead, Petitioners argue the trial court should have focused its review on January and February 2015, when Decedent decided to disinherit Petitioners. *See id.* Petitioners also complain that the trial court ignored evidence that would support a finding of weakened intellect. *See id.* at 34-37.

In its findings of fact and conclusions of law, the trial court acknowledged that Decedent had displayed some memory problems and alcoholism since 2008. *See* Findings of Fact and Conclusions of Law, 1/25/22, ¶¶ 28, 30. Nevertheless, the court credited the testimony of Dr. Christner, who performed two evaluations of Decedent on the advice of counsel. *See id.*, ¶ 49.

Dr. Christner testified at trial that he completed evaluation reports based on his evaluations of Decedent on February 27 and March 17, 2015. *See* N.T., 9/17/21, 8; *see also id.* at 15 (wherein Dr. Christner indicated he

reviewed Decedent's medical reports). Attorney Miller had referred Decedent to Dr. Christner for the express purpose of determining Decedent's capacity to make decisions. *See id.* at 8-9. Dr. Christner, referring to his report, described Decedent as independent. *See id.* at 10. Dr. Christner highlighted Decedent's good judgment and practical problem-solving. *See id.* Ultimately, Dr. Christner stated his conclusion that Decedent was able to make independent financial decisions. *See id.* at 11.

The trial court's factual findings are based on competent evidence, including Dr. Christner's testimony and reports. While Petitioners would prefer that this Court reweigh the evidence in their favor, we may not usurp the trial court's credibility determinations. *See In re Estate of Schumacher*, 133 A.3d at 49-50; *Estate of Mikeska*, 217 A.3d 329, 336 (Pa. Super. 2019) (explaining that in a non-jury proceeding, "[c]redibility determinations and consideration of conflicts in the evidence are within the purview of the trial court." (citation omitted)). For these reasons, we cannot conclude the trial court erred in determining that Petitioners did not meet their burden of establishing the elements of undue influence by clear and convincing evidence. Petitioners' first issue on appeal is therefore without merit.[10]

_____

[10] Petitioners argue in their appellate brief that the trial court erred in showing bias toward Fitchet by answering questions for her at trial. We conclude the trial court did not exhibit bias; it merely exercised reasonable discretion in controlling the scope of cross-examination. *See Commonwealth v. Boxley*, 838 A.2d 608, 615 (Pa. 2003) (observing that a trial court has discretion to

*(Footnote Continued Next Page)*

In their second issue, Petitioners argue the trial court erred in granting summary judgment on the issue of Decedent's testamentary capacity to execute the 2015 and 2017 Wills. *See* Petitioners' Brief at 50. Petitioners contend they established a genuine issue of material fact regarding Decedent's testamentary capacity through their reference to Decedent's medical records, anecdotal evidence from lay witnesses, and a 2015 report prepared by Dixon H. Miller, Ph.D. *See id.* at 50-53.

This Court may disturb the grant of summary judgment only if the trial court abused its discretion or committed an error of law. *See In re Estate of Hooper*, 80 A.3d 815, 818 (Pa. Super. 2013) (citation omitted).

"Testamentary capacity exists when a testator is aware of the natural objects of his bounty, the composition of his estate and what he wants done with it, even if his memory is impaired by disease." *In re Estate of Nalaschi*, 90 A.3d at 12. "Neither old age, nor its infirmities, including untidy habits, partial loss of memory, inability to recognize acquaintances, and incoherent speech, will deprive a person of the right to dispose of his own property." *In re Estate of Smaling*, 80 A.3d 485, 494 (Pa. Super. 2013). The burden of establishing testamentary incapacity is not met by merely establishing that

---

exercise reasonable control over the interrogation of witnesses to avoid an unnecessary waste of its time). Specifically, it is clear from the transcript and the trial court opinion that the trial court did not find credible Petitioners' assertion that Fitchet intentionally misrepresented material facts in either her testimony or in her verification of the 2015 complaint filed jointly by Decedent and Fitchet. *See* N.T., 9/14/21, at 85.

the testator was unable to conduct his business affairs. ***See id.*** Testamentary capacity must be evaluated as of the date the contested will was executed. ***See id.***

On appeal, Petitioners highlight Dr. Miller's report, which he completed after conducting a neuropsychological status examination on Decedent after his brain injury for the purpose of assessing Decedent's rehabilitative needs. **See** Brief Opposing Motion for Summary Judgment, 10/5/20, Exhibit D (Dr. Miller's Evaluation). However, while Dr. Miller's report is certainly evidence that Decedent suffered from decreased acuity after the accident, nothing in the report supports a finding that Decedent was unaware of the natural objects of his bounty, the composition of his estate, or what he wanted done with his estate. Even in their appellate brief, Petitioners fail to identify any evidence that directly addressed the three elements of testamentary capacity, as opposed to general allegations of mental infirmity. Petitioners have not established that the trial court abused its discretion or erred in its application of law in granting summary judgment in favor of Fitchet on the issue of Decedent's testamentary capacity. Therefore, Petitioners are not entitled to relief on their second claim.

In their third and final claim, Petitioners contend the trial court abused its discretion by denying the joint petition to approve a settlement agreement. **See** Petitioners' Brief at 54. According to Petitioners, the proposed settlement

agreement addressed the problems the court had directed them to solve and funded a trust for Grandchildren. ***See id.***

Section 3323 of the Probate, Estates, and Fiduciaries Code permits a court to authorize settlements:

>  **(a) In general.--**Whenever it shall be proposed to compromise or settle any claim, whether in suit or not, by or against an estate, or to compromise or settle any question or dispute concerning the validity or construction of any governing instrument, or the distribution of all or any part of any estate, or any other controversy affecting any estate, the court, on petition by the personal representative or by any party in interest setting forth all the facts and circumstances, and after such notice as the court shall direct … may enter a decree authorizing the compromise or settlement to be made.

20 Pa.C.S.A. § 3323(a).

The language of section 3323(a) is clear that the court's authority to approve a settlement agreement is discretionary rather than mandatory. "When the Orphans' Court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden." ***In re Estate of Talerico***, 137 A.3d 577, 580 (Pa. Super. 2016) (citation omitted). A court commits an abuse of discretion when it overrides or misapplies the law, exercises its judgment in a manifestly unreasonable manner, or renders a decision as a result of partiality, prejudice, bias, or ill-will. ***See id.*** at 581 (citation omitted).

In its Rule 1925(a) opinion, the trial court reiterated its conclusion that Decedent clearly intended to disinherit Petitioners and to provide for Grandchildren. ***See*** 1925(a) Opinion, 6/9/22, at 2. However, due to the

insolvency of the estate, Decedent's goal of providing for Grandchildren was not accomplished under the 2017 Will. **See id.** The trial court concluded that the proposed settlement agreement still did not accomplish those goals. **See id.** at 2-3. Rather, significant settlement proceeds would pass through Petitioners, who were explicitly disinherited under the 2017 Will. **See id.**

On review, we agree with the trial court's finding that the proposed settlement agreement did not achieve Decedent's intentions under the 2017 Will. In fact, the agreement disregarded Decedent's clear intention to disinherit Petitioners. We discern no abuse of the trial court's discretion in denying the settlement agreement in favor of Decedent's clearly delineated wishes. **See In re Stoffel's Estate**, 145 A. 70, 71 (Pa. 1929) ("One possessed of testamentary capacity, who makes a will in Pennsylvania, may die with the justifiable conviction that the courts will see to it that his dispositions, legally made, are not departed from by those charged with the duty of performance, or improperly defeated by agreement between those upon whom he bestowed his bounty."). Accordingly, Petitioners' final claim also fails.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/2023